UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-62416-CIV-SCOLA
(12-60011-CR-SCOLA)
MAGISTRATE JUDGE P.A. WHITE

SCOTT W. BARNES,

    Movant,

v.                                          **REPORT OF**
                                      **MAGISTRATE JUDGE**

UNITED STATES OF AMERICA,

    Respondent.

_____/

# I. Introduction

The *pro se* movant, Scott Barnes, has filed this amended motion to vacate (Cv-DE#8), pursuant to 28 U.S.C. §2255, challenging the constitutionality of his convictions and sentences for conspiracy to distribute narcotics and conspiracy to use communication for narcotics distribution, in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C. §846, entered following a jury verdict in **case no. 12-60011-CR-SCOLA.**

This Cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),©; S.D.Fla. Local Rule 1(f) governing Magistrate Judges, S.D. Fla. Admin. Order 2003-19; and, Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the movant's amended motion (Cv-DE#8), the government's response (Cv-DE#10) to this court's order to show cause with supporting exhibits, the movant's reply to the government's response (Cv-DE#22), the movant's supplemental reply

to the government's response (Cv-DE#28), the government's amended response to this court's supplemental order to show cause (Cv-DE#32), the Presentence Investigation Report ("PSI"), the Statement of Reasons ("SOR"), and all pertinent portions of the underlying criminal file under attack here, including the trial and sentencing transcripts.[1]

## II. Claims

This court, recognizing that movant is *pro se,* has afforded him liberal construction pursuant to Haines v. Kerner, 404 U.S. 419 (1972). In his §2255 motion, the movant raises the following 44 grounds for relief, as follows:

### Ineffective assistance of counsel claims

He was denied effective assistance of counsel, where his lawyer:

1. failed to investigate the DEA agents involved in movant's arrest. (Cv-DE#8:5).

2. failed to investigate eyewitnesses to movant's arrest. (Cv-DE#8:6).

3. failed to file a motion to suppress movant's statements. (Cv-DE#8:8).

4. failed to file a motion to suppress evidence recovered from movant's cell phone. (Cv-DE#8:9).

5. failed to file a motion for release of Brady material. (Cv-DE#8:15).

6. failed to object to the introduction of business records. (Cv-DE#8:15).

---

[1]The undersigned takes judicial notice of its own records as contained on CM/ECF in those proceedings. See Fed.R.Evid. 201.

7.    failed to object to the introduction of MetroPCS subscriber records. (Cv-DE#8:15).

8.    failed to make a proper objection to the illegal seizure of his phone. (Cv-DE#8:15).

9.    filed a motion to continue trial against movant's wishes. (Cv-DE#8:15).

10.   failed to object to the admission of a photo of a cell phone that was obtained without a valid warrant. (Cv-DE#8:15).

11.   failed to object to the government's statements during closing argument. (Cv-DE#8:16).

12.   failed to file a motion to dismiss counts 1 and 2 of the indictment as they were based on misleading testimony to the grand jury. (Cv-DE#8:16).

13.   failed to file a motion to challenge the validity of his arrest warrant. (Cv-DE#8:16).

14.   failed to file a motion to reconsider government reports. (Cv-DE#8:16).

15.   failed to object to the admission of wiretap recordings. (Cv-DE#8:16).

16.   failed to submit wiretap transcripts that did not contain movant's name. (Cv-DE#8:17).

17.   failed to object to the introduction of a copy of a video segment. (Cv-DE#8:17).

19.   failed to object to the government's re-labeling of exhibits. (Cv-DE#8:17).

20.   failed to object to Amber Sargent's hearsay trial testimony. (Cv-DE#8:17).

21. failed to object to Amber Sargent's pre-trial hearing testimony. (Cv-DE#8:17).

22. failed to file a motion to sever movant's case from that of his co-defendants. (Cv-DE#8:17-18).

23. failed to file a motion requesting a Franks hearing. (Cv-DE#8:18).

24. failed to object to the introduction of a DEA list of chemicals without proper authentication. (Cv-DE#8:18).

26. failed to provide movant with discovery prior to trial. (Cv-DE#8:18).

27. failed to file a motion for summary judgment. (Cv-DE#8:22).

28. failed to inform movant that he was going to call his uncle as a defense witness. (Cv-DE#8:19).

29. questioned the government's agents about the meaning of alleged code words. (Cv-DE#8:19).

30. failed to object to David O'Neill's testimony about his co-defendant's confession. (Cv-DE#8:19).

31. failed to object to the admission of 612 grams of cocaine, which the laboratory expert had modified. (Cv-DE#8:19).

32. failed to cross-examine Willie Perez. (Cv-DE#8:19).

33. failed to cross-examine DEA supervisor, Mike Gannon. (Cv-DE#8:19).

34. failed to cross-examine David O'Neill. (Cv-DE#8:20).

35. failed to cross-examine various Lee County Sheriff Officers. (Cv-DE#8:20).

4

36. failed to file a Rule 33 motion at the
    same time that he filed a Rule 29 motion.
    (Cv-DE#8:20).

37. failed to object to movant being shackled
    during the trial. (Cv-DE#8:20).

38. failed to object to the government's use
    of perjured testimony. (Cv-DE#8:20).

39. failed to effectively cross examine Lamar
    Bennett and Amber Sargent. (Cv-DE#8:21).

40. failed to argue the evidence was
    insufficient to prove that his voice was
    the one on the wiretap. (Cv-DE#8:21).

### Claims of Trial Court Error

18. The district court erred in admitting a
    copy of a video segment, when the
    original was available. (Cv-DE#8:17).

25. The district court erred in admitted
    business records without authentication
    declarations. (Cv-DE#8:18).

41. The government failed to prove that
    movant conspired to distribute 500 or
    more grams of cocaine and oxycodone. (Cv-
    DE#8:21).

42. The evidence presented at trial
    constituted a fatal variance from the
    offense charged in the indictment. (CV-
    DE#8:21).

43. The district court erred when it allowed
    the case agent to testify as an expert
    witness. (CV-DE#8:21).

### Appellate Counsel Claim

44. He received ineffective assistance of
    appellate counsel, where his lawyer
    failed to raise numerous issues on direct

appeal. (CV-DE#8:22).

### III. <u>Procedural History</u>

Briefly, movant was charged with and found guilty by a jury of conspiracy to distribute a controlled substance and conspiracy to use a communication facility to facilitate the commission of narcotics distribution in violation of 26 U.S.C. §841(a)(1), §843, and §846.(Cr-DE#506).

Prior to sentencing, a PSI was prepared, which revealed that, the total adjusted offense level was set at a level 37. (PSI ¶90). Next, the probation officer determined that the movant had a total of criminal history category of VI. (PSI ¶99). Based on these findings, movant was facing 360 months imprisonment on the low end and life imprisonment on the high end of the advisory guidelines. (PSI ¶124).

Movant appeared for sentencing on January 25, 2013. (Cr-DE#676). After a discussion was had regarding the government's burden to prove that movant was, in fact, a career offender, both parties stipulated to a guideline range of 151 to 188 months. (Id.:5-8). After hearing from the government and the movant, the court then indicated it had considered the statements of the parties, the PSI, the advisory guidelines, and the statutory factors set forth in 18 U.S.C. §3553. (Id.:16).

Thereafter, the court sentenced the movant to a total term of 151 months imprisonment, as to count 1, and 96 months imprisonment, as to count 2, to be served concurrently. (Id.). The term of imprisonment was to be followed by a total of eight years of

supervised release. (Id.:17).[2]

Movant prosecuted a direct appeal and on January 30, 2015, the Eleventh Circuit entered an order denying Movant's appeal. (Cr-DE#296). The Supreme Court denied certiorari review on October 6, 2015. (Cr-DE#297).

Thus, movant's judgment of conviction became final on **October 6, 2015,** when movant's petition for writ of certiorari in the Supreme Court was denied.[3] The movant thus had until **October 6, 2016** to file the instant petition with this court, which is one year from the time the judgment of conviction became final. See Insignares v. Fla. Dep't of Corr's, 755 F.3d 1273, 1280 (11th Cir. 2014). Therefore, the filing of this motion to vacate on **October 5, 2016,** is timely.[4] (Cv-DE#1). This is so because it was

---

[2]Movant subsequently filed a motion to reduce sentence pursuant to 18 U.S.C. §3582 and Amendment 782 to the Sentencing Guidelines. (Cr-DE#796). Movant's motion was granted by the court and his sentence was reduced to 121 months as to count 1 to run concurrent with the 96 month sentence on count 2. (Cr-DE#832).

[3]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufman, 282 F.3d 1336 (11th Cir. 2002); Wainwright v. Sec'y Dep't of Corr's, 537 F.3d 1282, 1283 (11th Cir. 2007)(conviction final under AEDPA the day U.S. Supreme Court denies certiorari, and thus limitations period begins running the next day).

[4]Movant filed his motion in accordance with the mailbox rule. "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see Fed.R.App. 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

instituted before the one year period expired.[5]

## IV. **Threshold Issues-Timeliness**

The government rightfully does not challenge the timeliness of the movant's motion (Cv-DE#1) to vacate since it was filed prior to the expiration of the federal one-year limitations period. See 28 U.S.C. §2255.

## V. **General Legal Principles**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to §2255 are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. See 28 U.S.C. §2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496

---

[5]To the extent that the granting of movant's motion to reduce sentence discussed in footnote 2 constituted a new judgment under Insignares, movant's motion is still timely. In Insignares, the Eleventh Circuit found that, for purposes of the AEDPA, "judgment" refers to the underlying conviction and the most recent sentence that authorizes a petitioner's current detention. Id. The court noted that a resentencing results in a new judgment that restarts the AEDPA's one-year statute of limitations period. Id. (citing Ferreira, at 1292-1293).

(1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent ...."

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. Strickland v. Washington, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When assessing counsel's performance under Strickland, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance...." Burt v. Titlow, ___ U.S. ___, 134 S.Ct. 10, 18, 187 L.Ed.2d 348 (2013). To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 687-88.

To establish deficient performance, the movant must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Strickland, supra. See also Cummings v. Sec'y for Dep't of Corr's, 588 F.3d 1331, 1356 (11th Cir. 2009)("To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place.")(internal quotation marks omitted). The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally

9

compelled." <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th
Cir. 2000)(*en banc*), <u>cert. den'd</u>, 531 U.S. 1204 (2001)(<u>quoting</u>
<u>Burger v. Kemp</u>, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638
(1987)).

    Furthermore, a §2255 movant must provide factual support for
his contentions regarding counsel's performance. <u>Smith v. White</u>,
815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations
of ineffective assistance are insufficient to satisfy the
<u>Strickland</u> test. <u>See</u> <u>Boyd v. Comm'r, Ala. Dep't of Corr's</u>, 697 F.3d
1320, 1333-34 (11th Cir. 2012); <u>Garcia v. United States</u>, 456
Fed.Appx. 804, 807 (11th Cir. 2012) (<u>citing</u> <u>Yeck v. Goodwin</u>, 985
F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v. United States</u>, 962 F.2d
996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559
(11th Cir. 1991), <u>cert. den'd</u> <u>Tejada v. Singletary</u>, 502 U.S. 1105
(1992); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990)(<u>citing</u>
<u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d
136 (1977)); <u>United States v. Ross</u>, 147 Fed.Appx. 936, 939 (11th
Cir. 2005).

    Finally, the Eleventh Circuit has recognized that given the
principles and presumptions set forth above, "the cases in which
habeas petitioners can properly prevail...are few and far between."
<u>Chandler</u>, 218 F.3d at 1313. This is because the test is not what
the best lawyers would have done or even what most good lawyers
would have done, but rather whether some reasonable lawyer could
have acted in the circumstances as defense counsel acted. <u>Dingle</u>,
480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th
Cir. 2000). "Even if counsel's decision appears to have been unwise
in retrospect, the decision will be held to have been ineffective
assistance only if it was 'so patently unreasonable that no
competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099

(quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).
The Sixth Circuit has framed the question as not whether counsel
was inadequate, but rather counsel's performance was so manifestly
ineffective that "defeat was snatched from the hands of probable
victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir.
1992).

        As will be demonstrated in more detail below, the movant is
not entitled to vacatur on the claims presented. When viewing the
evidence in this case in its entirety, the alleged errors raised in
this collateral proceeding, neither individually nor cumulatively,
infused the proceedings with unfairness as to deny the movant a
fundamentally fair trial and due process of law. The movant
therefore is not entitled to habeas corpus relief. See Fuller v.
Roe, 182 F.3d 699, 704 (9th Cir. 1999)(holding in federal habeas
corpus proceeding that where there is no single constitutional
error existing, nothing can accumulate to the level of a
constitutional violation), overruled on other grounds, Slack v.
McDaniel, 529 U.S. 473, 482 (2000). See also United States v.
Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990)(stating that "a
cumulative-error analysis aggregates only actual errors to
determine their cumulative effect."). Contrary to the movant's
apparent assertions, the result of the proceedings were not
fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506
U.S. 364, 369-70 (1993).

## VI. Facts Adduced at Trial

        Given the sheer number of movant's claims raised herein, and
the fact that movant's case involved a 9 day jury trial with
multiple co-defendants, a summary of the facts at trial as written
by the Eleventh Circuit Court of Appeals is included below and

11

intended to aid this court in evaluating movant's claims in the appropriate context. To the extent it is necessary, this court will further cite to the trial transcript when evaluating the merits of movant's substantive claims.

> In January 2012, a federal grand jury returned an indictment against nine defendants: Andre Barbary, Scott Barnes, Kim Carswell, Willie Hartfield, Nathaniel Holt, Robert Jackson, Tamika Jasper-Barbary, Robert Lespinasse, and Monica Lewis.

> The indictment charged the defendants with one count of conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine and oxycodone, in violation of 21 U.S.C. §841(a)(1),(b)(1)(A), (b)(1)©, and §846 (count 1); and one count of conspiring to use a communication facility to facilitate a narcotics crime, in violation of 21 U.S.C. §841(a)(1) and §846 (Count 2).

> The indictment alleged that the defendants committed Count 1 beginning on or about January 1, 2000, and continuing through on or about the January, 2012 date of the indictment, and committed Count 2 on or about February 1, 2010, and continuing through on or about the January, 2012 date of the indictment.

> Four defendants—Carswell, Jackson, Jasper-Barbary, and Lespinasse pled guilty to one or both counts. The remaining five defendants—Barbary, Barnes, Hartfield, Holt and Lewis—proceeded to a nine-day jury trial in November 2012. Cooperating codefendants Carswell and Lespinasse testified at trial.

United States v. Holt, 777 F.3d 1234,1243 (11th Cir. 2015)(See also Cr-DE#786:4-5). During the trial, the following evidence was presented before the jury:

### A. Cooperating Co-Conspirators' Testimony

Government witness Lamar Bennett, who was convicted in a separate case, testified that he had known defendant Barbary since the ninth grade and that he and Barbary

began "[s]elling drugs on the corner" together in Opa-
locka in 1995. Barbary would pay Bennett $100 per day to
sell $4,500 to $5,000 worth of drugs, including crack
cocaine, powder cocaine, and heroin. Bennett was
incarcerated from 1996 to 2000. When Bennett was released
from prison in 2000, Barbary was transporting cocaine
from Florida to South Carolina in quantities of three to
five kilograms at a time. Bennett, joined sometimes by
defendant Hartfield, accompanied and assisted Barbary on
six or seven trips transporting cocaine to South
Carolina.

Bennett further testified that, sometime after 2007, he
started transporting tens of thousands pills per month
from South Florida into Alabama, including pills supplied
by Barbary. During that time period, Bennett also was
purchasing cocaine from Barbary to sell in Alabama.
Defendant Barbary sometimes used defendant Holt to
deliver drugs to Bennett. Defendants Barbary, Hartfield,
and Holt, as well as Bennett, all used cell phones to
contact each other concerning their drug organization and
used code words to discuss drug deals. Barbary kept
multiple cell phones, and routinely would change out his
phones out of fear that the government was monitoring his
calls.

Bennett additionally testified that, prior to his arrest
in April 2011, he also assisted defendant Barbary in
packaging cocaine for delivery to Robert Jackson on the
west coast of Florida. Kim Carswell and defendant Lewis
transported the drugs to the west coast of Florida. On
cross-examination, Bennett conceded that he had not
personally seen Lewis with drugs, but he had seen her
arrive at Barbary's house with large amounts of cash.
Moreover, Bennett testified, Barbary had told him that
Lewis "was across the street," which Bennett understood
to mean that Lewis was on the west coast of Florida
delivering drugs.

Finally, Bennett testified that defendant Barbary's
organization was also transporting drugs into Boston,
Massachusetts. Cooperating codefendant Carswell also
testified that, in September 2010, Barbary had her "go
pick up the money from Boston" after defendant Hartfield
was arrested at a train station in Boston with pills in
his possession. Ultimately, Carswell made four to six
trips to Boston via plane for Barbary, picking up around

13

$75,000 in cash each time

Cooperating codefendant Robert Lespinasse testified that he moved into the apartment underneath defendant Holt's unit in summer 2011. After Lespinasse lost his job, Holt indicated that he was willing to help Lespinasse sell drugs. Holt told Lespinasse that Holt and Barbary were "moving cocaine out of town" and selling heroin, and that Holt used to transport oxycodone up to Boston. Lespinasse further testified that, after he purchased a half-ounce of cocaine from an unspecified source, Holt arranged to have Barbary cook the cocaine into crack cocaine for him. And later Barbary asked Lespinasse if Lespinasse's source would sell Barbary a kilogram of cocaine. Subsequently, Lespinasse sold Barbary a half-kilogram of cocaine for $14,400 and a quarter-kilogram of cocaine for $7,200.

### B. Seizures of Currency Evidence

Law enforcement seized multiple large sums of cash from the conspirators between 2007 and 2011. The jury heard testimony as to the above-described June 2007 and January 2010 traffic stops of defendant Holt that resulted in the seizure of $45,940 in cash and $31,260 in cash, respectively. Additionally, in January 2011, when Carswell attempted to pass through security screening at Boston Logan International Airport, a large amount of cash was discovered among her things. Ultimately, law enforcement was alerted and $76,040 was seized from Carswell at the airport.

In March 2011, law enforcement intercepted a box containing approximately $58,000 in cash sent through the mail from "Ron Smith, 148 Main Street, Foxboro, Mass" to "Can't Stop Trucking" in Hollywood, Florida. At the time, Carswell's point of contact in Boston was Ricardo Stevenson, who would meet with Carswell and give her the money to return to Barbary. His address was 149 Main Street in Foxboro, Massachusetts.

The evidence showed that Can't Stop Trucking was defendant Barbary's trucking company that was run out of his residence at the Florida address listed on the package. Following the interception of the package, a police officer went to that address and spoke with defendant Lewis, who claimed to be the manager of Can't Stop Trucking. Lewis denied that the business ever

14

received boxes of cash in the mail. Lewis also denied that she had a contact number for Barbary. However, phone records showed that Lewis and Barbary called each other around 30 times between March 23 and 24, 2011.

Finally, federal agents searched Jackson's house in Fort Myers on December 2, 2011, and seized approximately $20,000 in cash, which a drug dog alerted on.

### C. Seizures of Oxycodone and Cocaine from Defendants

As mentioned in Carswell's testimony, defendant Hartfield was arrested in September 2010 at a Boston train station with oxycodone and other pills in his possession. Evidence at trial showed that, between June and September 2010, Hartfield made multiple two-day train trips from Florida to Boston. Hartfield's train tickets were purchased with a Visa Netspend prepaid debit card ("Netspend card") in his name. However, the billing address, email address, and phone number associated with the Netspend card belonged to Barbary. Hartfield's September 2010 train ticket had two associated phone numbers, one belonging to Barbary and one belong to Hartfield.

On September 24, 2010, Hartfield arrived in Boston from Hollywood, Florida, via train. Upon his arrival, Hartfield was arrested on an outstanding warrant by DEA Special Agent David O'Neill. After receiving Miranda warnings, Hartfield stated that he wished to cooperate and admitted to Agent O'Neill that he had, on four to five prior occasions, transported oxycodone from Florida to Boston. A search of the bag that Hartfield brought on the train trip revealed more than 9,300 oxycodone pills.

Following Hartfield's arrest, while he remained in custody, activity on the Netspend card continued, including in South Florida. In particular, deposits totaling more than $8,000 were made onto the card between September 2010 and March 2011. Additionally, records from the travel website Expedia showed that multiple trips between February 2010 and June 2011 were booked using the Netspend card through an Expedia account registered under Barbary's name.

On September 29, 2011, a police officer pulled over a car driven by defendant Lewis, with an infant child in the

backseat, on I-75 near Fort Myers, Florida. Because Lewis's license was suspended, the officer wrote Lewis a citation, arranged for a tow of Lewis's vehicle and transportation for Lewis to a nearby 7-Eleven where she could wait for a ride, and told Lewis she could take essential items for the baby. Lewis wanted to take a large baby stroller and a box of laundry detergent with her. When the officer told Lewis that there was not room in the transport vehicle for the items, Lewis said that she would return the stroller but insisted on keeping the detergent. However, the officer did not allow Lewis to take the detergent. Law enforcement subsequently discovered inside the box of detergent two vacuum-sealed bags containing a total of 613.2 grams of cocaine.

## D. Wiretap Evidence and DEA Agent Amber Sargent's Testimony

Pursuant to district court orders, four of defendant Barbary's cell-phones were tapped and monitored by federal agents from August 24, 2011, through January 13, 2012. The government's lead case agent, DEA Special Agent Amber Sargent, testified that she reviewed at least 99 percent of the thousands of phone calls and text messages that were intercepted over the wiretaps.

Overruling objections by defendants Holt, Barnes, Lewis, and Barbary, the district court admitted Agent Sargent as an expert witness in the area of drug-trafficking organizations' techniques to avoid detection, including use of coded language, and permitted her to testify as to the meanings of code words and phrases used by the conspirators on intercepted communications. Agent Sargent testified that she had been a DEA special agent for more than six years, had experience in narcotics investigations, and had experience working on two prior wiretap investigations. Agent Sargent was the lead case agent in one of those prior wiretap investigations, and the surveillance team leader in the other. She also was knowledgeable about common prices for particular quantities of illegal drugs.

Agent Sargent further testified that, based on her training and experience, she had learned that drug-traffickers sometimes used code words for controlled substances. As to this case, she formed opinions as to the meanings of the coded language used by the

16

conspirators in the intercepted communications based on her training and experience, the investigation, logic, and the content and context of the communications. Although an untrained person possibly could listen to an intercepted phone call and accurately guess as to the meaning of certain words, Agent Sargent testified, her training and experience, knowledge of the investigation, and ability to understand the context of the calls enabled her to more accurately interpret the code words and language than either a lay person or the prosecutor.

In rejecting the defendants' arguments that Agent Sargent was not qualified to testify as an expert witness, the district court found Sargent's testimony admissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993), based on her training as a DEA agent, her prior experience both on wiretap cases and generally as an agent, and the extent of her involvement in this particular case. The district court then instructed the jury: "A scientific technical or other specialized knowledge might be helpful, a person who has training and experience in that field is allowed to state an opinion about that matter, but that doesn't mean you must accept the witness's opinion. As with any other witnesses's [sic] testimony, you must decide for yourself whether to rely on that opinion."

The government played for the jury numerous recorded cell phone conversations between defendant Barbary and other conspirators, and asked Agent Sargent after some of the recordings, based on her training and experience, to explain or interpret various words and phrases used by the conspirators.

For example, in an August 26, 2011, phone call, Barbary told defendant Lewis to take "that thing in the glove . . . [and] weigh all that right quick." Lewis then sent a text message to Barbary, stating: "446.2," to which Barbary responded: "Put all2gether n seal it." Agent Sargent testified that she believed that Barbary was texting Lewis to weigh an illegal substance and seal it.

On August 28, 2011, defendant Barnes told Barbary that he had, in the morning, "served a lil bit," and then later in the day, again "served a lil." Later in that call Barnes also said that he had spoken with an individual who "say[s] he can move it" and whose "home boys had one

down there in Lauderdale." Barbary responded that Barnes
should "get at [Barbary] tomorrow." A few days later,
Barbary asked Barnes whether Barnes had "check[ed] with
the boy about the thing." Barnes responded that the
person had three people at five different doctors.
Barbary asked "[h]ow much they suppose[d] to get," and
Barnes responded, "Three hundred." Agent Sargent
testified that she believed Barnes's statements about
"serv[ing] a lil" referred to distributing drugs, and
that Barnes and Barbary's conversation about "three
hundred" and having three people at five doctors
"referr[ed] to doctor shopping for Oxycodone pills."

On September 10, 2011, in a phone call with Jackson,
defendant Barbary asked, "[H]ow long you think she have
the key?" Jackson replied, "I don't know . . . I got to
hit him up . . . he want a son too." Agent Sargent
testified that "key" meant kilogram and the term "son"
referred not to a child, but to a drug quantity that was
less than a kilogram. Later that day, Jackson and Barbary
discussed grabbing "a son," "the one crazy," that Jackson
was "already started on [his] second son," and that "both
of the crazy gone." The next day, Barbary asked Barnes
whether Barnes was "ready on that," and Barnes replied,
"Naw . . . three left."

In a September 14, 2011, phone call with Adrian Garvin,
Barbary asked Garvin whether the "moonlight blu ray movie
came out?" When Garvin responded affirmatively, Barbary
inquired as to the price. Garvin said it was "$30, and
Barbary replied, "Oh the whole big DVD? . . . [T]hat's
kind of steep right now." Garvin suggested that he could
"maybe politic with the [person]," and Barbary said,
"Alright, I'll hit you when I'm in the area tomorrow."
Agent Sargent testified that she believed that the "$30"
on a "whole big DVD" referred to $30,000 for a kilogram
of cocaine.

Shortly thereafter, in a phone call between Barbary and
Jackson, Jackson said that his "last son bitch, that
bitch weighed two twenty eight . . . I got one more son
left, the little short one . . . I told you to, got to
buy them sons dog." Later in the call, Barbary said, "I
going to throw you that grown over there . . . . I'm just
waiting on a mother fucker to come." Jackson responded,
"If I do the son for the all eight two fifty. . . . that
will be thirty-three . . . I'm trying to keep that shit

18

moving." Agent Sargent testified as to her opinion that "228" referred to 228 grams, the "little short one" referred to the 228 grams, and the "eight two fifty" referred to the price of a "son," which she believed to be a quarter-kilogram of cocaine based on the price of cocaine and the fact that "four times 8,250" would equal "$33[,000]."

Barbary and defendant Barnes, in a September 16, 2011, phone call, discussed that Barnes's "cousin" had called and "[s]aid it's supposed to be comin to him." Barnes told Barbary that the "cousin's" "number ain't gonna be what you be . . . trying to get. . . . Be like, what you gonna say something over 30, 30 or better?" Barbary said that would not work and to "see if he say something under that." Barbary and Barnes agreed on "29 or better." Agent Sargent testified that she believed that "29" and "30" referred to the price of a kilogram of cocaine, $29,000 or $30,000. Barnes and Barbary spoke again on September 18, 2011, and Barbary asked, "You ready for me?" Barnes responded, "Not yet. . . . Three left."

In a September 21, 2011, phone call with Barbary, Barnes complained that he was "[l]osing all of [his] god damn customers. One got killed, one in jail." Agent Sargent testified that she believed that Barnes was referring to his customers in the drug business.

On September 26, 2011, Jackson told Barbary, "I'm doing my last son mighta wanted a grown man," and Barbary said, "I can probably still pull one or two out of my hat." That same day, Barbary asked Barnes whether Barnes was "ready," and Barnes said he was "working on the last one." The next day, Barnes told Barbary that "Cousin said thirty," and Barbary responded that he did not want it because "that number is too high." Later that day, Jackson notified Barbary that he would "be ready for a grown tomorrow if you still got it," and Barbary said, "I do." In a subsequent phone call, Barbary asked Jackson, "How long before you kill that other son?," and Jackson replied, "[P]robably like tomorrow." Agent Sargent testified as to her opinions that "30 being $30,000" referred to the price of a kilogram of cocaine, and that "grown" and "son" meant a kilogram and quarter-kilogram of cocaine, respectively.

In an October 13, 2011, phone call between Barnes and

Barbary, Barnes referred to a person who "wanted some some [sic] crazy." Barbary said, "Alright what you wanna get it in the morning?" Barnes replied, "Yea." The next day, Barbary told Barnes, "I'm gonna have you meet me at the lake." Agent Sargent testified that she believed "the lake" referred to a house in Opa-locka and that a cooperating codefendant had told her that "crazy" meant heroin.

During an October 30, 2011, phone call between defendant Holt and Barbary, Barnes—using Holt's phone—got on the line with Barbary at one point, indicating a connection between Holt and Barnes. Additionally, in two other phone calls between Barbary and Holt, Holt referred to earlier conversations between himself and Barnes.

On November 23, 2011, Barbary and Barnes had a conversation in which Barnes twice referenced "the regular." On November 25, 2011, Barnes said that he "already got the cheese" and asked Barbary whether Barbary had "the crazy." The next day, after Barnes complained that he was no longer Barbary's "main man," Barbary said, "[W]e gonna get together." Barnes asked, "On the crazy or the other thing," and Barbary said, "Everything."

### E. Search Warrants

On December 15, 2011, federal agents executed a search warrant at defendant Holt's apartment in Opa-locka, Florida. After officers knocked and announced their presence, a red plastic cup containing 20 oxycodone pills was thrown by one of the apartment's occupants out of a window, and officers entered and found Holt and his girlfriend present in the apartment.

Federal agents then executed a search warrant on Barbary and Jasper-Barbary's residence on January 13, 2012. The residence contained security cameras on all four corners. Agents seized a book called "Busted By the Feds, The Book: Defendants facing federal prosecution, including the latest sentencing guidelines for all federal crimes"; a computer with documents regarding heroin and asset forfeiture in drug cases; and a computer that, in an account assigned to Lewis, contained photographs of a large amount of money. When Barbary was arrested, the Netspend card was on his person.

20

The jury found all five defendants guilty of Count 1,
with the following findings as to the type of drugs each
defendant conspired to distribute and possess with intent
to distribute, including, if applicable, the quantity of
cocaine: (1) as to Holt, oxycodone and between 500 and
5,000 grams of cocaine; (2) as to Barbary, oxycodone and
five kilograms or more of cocaine; (3) as to Barnes,
oxycodone and between 500 and 5,000 grams of cocaine; (4)
as to Hartfield, oxycodone; and (5) as to Lewis, between
500 and 5,000 grams of cocaine. The jury also found Holt,
Barnes, Lewis, and Barbary guilty of Count 2, but found
Hartfield not guilty of that count.

(Cr-DE#786:5,17-30)(internal footnotes omitted).

## VII.  Discussion

Bare and conclusory claims are subject to summary dismissal.
Machibroda v. United States, 368 U.S. 487 (1962). It is well
settled that a movant must argue his claims. Fils v. City of
Aventura, 647 F.3d 1272, 1284 (11th Cir.2011) ("district courts
cannot concoct or resurrect arguments neither made nor advanced by
parties."). That includes citation to the record:

[A]ll of these principles of law would mean nothing if
district courts were required to mine the record,
prospecting for facts that the habeas petitioner
overlooked and could have, but did not, bring to the
surface in his petition. Making district courts dig
through volumes of documents and transcripts would shift
the burden of sifting from petitioners to the courts.
With a typically heavy caseload and always limited
resources, a district court cannot be expected to do a
petitioner's work for him. Cf. Adler v. Duval County
School Board, 112 F.3d 1475, 1481 n. 12 (11th Cir.1997)
(noting in a civil case that, absent plain error, "it is
not our place as an appellate court to second guess the
litigants before us and grant them relief ... based on
facts they did not relate."); Johnson v. City of Fort
Lauderdale, 126 F.3d 1372, 1373 (11th Cir.1997) ("[W]e

21

are not obligated to cull the record ourselves in search
of facts not included in the statements of fact."). The
Seventh Circuit memorably said that appellate judges "are
not like pigs, hunting for truffles buried in briefs."
United States v. Dunkel, 927 F.2d 955, 956 (7th
Cir.1991). Likewise, district court judges are not
required to ferret out delectable facts buried in a
massive record, like the one in this case, which was more
than 25,000 pages of documents and transcripts.

Chavez v. Sec'y Fla. Dep't of Corr's, 647 F.3d 1057, 1059-60 (11th
Cir. 2011).


These combined requirements mean that petitioner must
construct his claims. For many of movant's claims, this motion to
vacate fails to set forth any factual support for the grounds
raised. Essentially, the only facts provided in support of the
petition were raised by the movant for the first time in his
multiple traverses. (Cv-DE#s22,28). A traverse is not the proper
vehicle to raise for the first time facts to support a ground for
relief. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th
Cir.1994) (traverse is not proper pleading to raise additional
grounds for relief); see also, Klauer v. McNeil, No.3:07CV541, 2009
WL 2399928, at *30 (N.D.Fla. July 31, 2009); Cleckler v. McNeil,
No.3:07CV283, 2009 WL 700828, at *11 n.4 (N.D.Fla. Mar.16, 2009).

The Eleventh Circuit in an analogous situation has determined
that "[s]imilar considerations bar an appellant from raising a new
issue in a reply brief." See Herring v. Sec'y, Dep't of Corr's, 397
F.3d 1338 (11th Cir. 2005) (arguments raised for the first time in
a reply brief are not properly before a reviewing court); United
States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (citation
omitted); United States v. Whitesell, 314 F.3d 1251, 1256 (11th
Cir. 2002)(court need not address issue raised for first time in
reply brief), cert. den'd, 539 U.S. 951, 123 S.Ct. 2628, 156

L.Ed.2d 643 (2003); <u>United States v. Dicter</u>, 198 F.3d 1284, 1289 (11th Cir. 1999) (issue raised for first time in reply brief waived); <u>United States v. Martinez</u>, 83 F.3d 371, 377 n.6 (11th Cir. 1996) (declining to consider arguments raised for the first time in a reply brief).

This Court is mindful of the <u>Clisby</u>[6] rule that requires district courts to address and resolve all claims raised in habeas proceedings, regardless of whether relief is granted or denied. <u>Clisby</u>, 960 F.2d at 935-36 (involving a 28 U.S.C. §2254 petition filed by a state prisoner); <u>see</u> <u>Rhode v. United States</u>, 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that <u>Clisby</u> applies to §2255 proceedings). However, nothing in <u>Clisby</u> requires or suggests consideration of a claim raised for the first time in a traverse. Therefore, to the extent the movant attempts to raise arguments or new claims in his traverses or in objections to this Report, the court should exercise its discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance.

In **claim 1**, movant asserts that he was denied effective assistance of counsel, where his lawyer failed to perform an adequate pretrial investigation regarding his arrest. (Cv-DE#8:5). More specifically, movant argues that counsel failed to investigate Special Agent Perez, whom movant claims was the arresting officer in his case. (Id.). He further claims that had counsel interviewed Agent Perez, he would have been able to find out more information about which DEA agents were present on scene. (Id.). As such, counsel failed to secure any recordings of his arrest. (Id.). Finally, he states that his counsel failed to travel to the scene

---

[6] <u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir.1992).

of arrest, and further failed to take photos of the residence next
door where his neighbors watched him get arrested. (Id.).

Effective assistance of counsel of course embraces adequate
pretrial investigation. See Strickland, 466 U.S. at 691 (1984).
The correct approach toward investigation, however, "reflects the
reality that lawyers do not enjoy the benefit of endless time,
energy or financial resources." Rogers v. Zant, 13 F.3d 384, 387
(11th Cir. 1994). To be effective, a lawyer is not required to
"pursue every path until it bears fruit or until all hope withers."
Williams v. Head, 185 F.3d 1223, 1237 (11th Cir. 1999) (citation
omitted). "The question is whether...ending an investigation short
of exhaustion, was a reasonable tactical decision. If so, such a
choice must be given a strong presumption of correctness, and the
inquiry is generally at an end." Mills v. Singletary, 63 F.3d 999,
1024 (11th Cir. 1995) (citation omitted). And it is axiomatic, of
course, that in all cases the defendant must establish prejudice in
addition to any alleged deficient performance. See Strickland, 466
U.S. at 687-88.

First, review of the record fails to support movant's claim
that Special Agent Perez was the arresting officer in his case. The
copy of the investigation report regarding movant's arrest which
was provided by the respondent, states that movant's arrest was
effectuated by Special Agent George Kissel with the assistance of
detectives from the Miami-Dade Police Department. (Cr-DE#32-1:2).
According to the report, there was no officer by the name of Perez
present on scene. (Id.:3). While a Telecommunications Specialist
named William Perez was listed as a witness on the government's
potential witness list, there is no indication that he was present
at the scene of arrest. (Cr-DE#419). Thus, movant's claim is belied
by the record. Counsel cannot be faulted for failing to investigate

24

an officer who was not even on scene at the time of arrest. As such, movant fails to demonstrate that counsel's performance was deficient under the first prong of <u>Strickland</u>.

Second, movant wholly fails to demonstrate how he was prejudiced by counsel's lack of investigation regarding the circumstances of his arrest. He does not explain how additional evidence, including photos and recordings of the arrest scene, would have aided him in his defense. Such bare allegations are insufficient. <u>See</u> <u>Boyd v. Comm'r, Ala. Dep't of Corr's</u>, 697 F.3d 1320, 1333-34 (11th Cir. 2012). In his reply, movant seems to suggest that he was prejudiced because counsel failed to investigate the witnesses, his neighbors, who allegedly saw officials take evidence out of his car, which included "over 4,000 Donk City Detailing business cards" that included movant's nickname as "cheese." (Cv-DE#22:2). Movant seems to suggest that because the business cards showed that his nickname was "cheese," that he could not have been the speaker named "Long" on the wiretap. (Id.). This argument is unavailing. Simply because movant may have had a different nickname at some point does not necessarily mean that he did not go by the nickname "Long" on the wiretap. This is especially true given the strong evidence submitted by the government to prove that movant actually was "Long," as will be demonstrated in more detail below. As such, counsel was not ineffective for failing to pursue an investigation of these alleged witnesses and purported evidence. Moreover, movant fails to establish that there is a reasonable probability that the outcome at trial would have been different but for counsel's alleged deficiency. <u>Strickland</u>, <u>supra</u>. at 694 (In order to satisfy the prejudice prong, the movant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

In related **claim 2**, movant asserts that he received ineffective assistance of counsel, where his lawyer failed to interview and subpoena eyewitnesses. (Cv-DE#8:6). More specifically, movant alleges that counsel failed to interview his neighbors, Fletcher Johnson, Mrs. Johnson and Norman Johnson, about the circumstances of his arrest.(Id.). He claims that these witnesses would have been able to testify about whether movant was under duress when he volunteered to give items to them. (Id.).

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). Indeed, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision and it is one that [the courts] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995).

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). In other words, to successfully assert that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony. United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984).

In the case at bar, movant fails to provide this court with any sworn witness affidavits to support his claim about the

witnesses' purported testimony. <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)(A defendant cannot simply state that an alleged witness's testimony would have been favorable, but rather must generally present the alleged testimony by the witness or an affidavit). As such, movant fails to make a sufficient factual showing substantiating the proposed witness testimony. <u>United States v. Schaflander</u>, 743 F.2d 714, 721 (9th Cir. 1984).

Moreover, as previously discussed in claim 1, the evidence which movant claims that witnesses would have testified to was Donk City business cards that officials removed from his car during his arrest. For the reasons set forth above, there is no indication that these business cards, which movant claims would have shown his nickname as "Cheese," would have actually negated the government's argument that he was "Long" on the wiretap. This is especially true given the strong evidence submitted to the jury to demonstrate that movant was, in fact, "Long." As such, movant fails to demonstrate that he was prejudiced by counsel's failure to present or interview these witnesses under the second prong of <u>Strickland</u>. Therefore, movant's claim should be denied on the merits as it warrants no habeas relief.

In **claim 3**, movant claims that he was denied effective assistance of counsel, where his lawyer failed to file a motion to suppress his arrest and post-arrest statements. (Cv-DE#8:8). More specifically, he claims that he was read his Miranda rights and declined to make any statements. (Id.). Afterwards, he had to fill out a form which requested his address and phone number, and he submitted to the taking of a DNA sample. (Id.).[7] Essentially, it

---

[7]To the extent movant argues in his reply that he was the victim of an unlawful search and seizure and that counsel was ineffective for failing to challenge evidence obtained from the unlawful search, such a claim will be

appears that movant means to argue that because he had already invoked his Miranda rights, that officers could not ask him for his phone number.

The Supreme Court has held that "questions...reasonably related to the police's administrative concerns...fall outside the protections of *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.ED.2d. 694 (1996)] and the answers thereto need not be suppressed." Maryland v. King, 569 U.S. 435, 456, 133 S.Ct. 1958, 1975, 186 L.Ed. 2d 1 (2013)(citing Pennsylvania v. Muniz 496 U.S. 582, 601-602, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990)). Following this reasoning, the Supreme Court held in Maryland v. King that the taking of a DNA sample from arrestees is a reasonable search that is part of a routine booking procedure. Maryland v. King, 569 U.S. at 465.

Moreover, it is well-settled that reasonable strategic choices by counsel regarding the various plausible options in a given case are "virtually unchallengeable." Strickland, 466 U.S. at 690. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Adams v. Wainwright, 709 F.2d 1443, 1145 (11th Cir. 1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. See Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001)(holding that counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy")(quoting Darden v. Wainwright, 477

---

addressed in claim 4, as it raises substantially similar issues. (CV-DE#22:4).

U.S. 168 (1986)); United States v. Costa, 691 F.2d 1358 (11th Cir. 1982); see also Foster v. Strickland, 707 F.2d 1339, 1343-44 (11th Cir. 1983)(stating that "Petitioner, who preempted his attorney's strategy choice, cannot now claim as erroneous the very defense he demanded [his attorney] present."), cert. denied, 466 U.S. 993 (1984).

Review of the record reveals that DEA Special Agent Kissell obtained movant's name, date of birth, and telephone number from him. (Cr-DE#497:252). The last four digits of the telephone number provided were 1530, which matched the telephone number on the Blackberry cell phone that was seized from movant's vehicle during his arrest. (Id.:253). This was the only post-arrest statement made by movant that was admitted into evidence at trial. (Id.). Records associated with the telephone number were also submitted into evidence, accompanied by certified business records which showed that the subscriber of the phone was "Donk City Detailing." (Cr-DE#478:217-218). Certified business records from the Florida Department of State showed that movant was the registered agent for Donk City Detailing. (Id.:218-219).

Firstly, there is no indication that asking movant for his phone number after he declined to waive his Miranda rights constituted an impermissible search. In fact, having movant's phone number may have been an issue of "administrative concern" that falls outside the protection of Miranda. See Maryland v. King, 569 U.S. at 456 (2013).

However, even when assuming that asking movant for his phone number did, in fact, constitute an impermissible search, there was

other evidence presented to prove movant's phone number. As will be discussed in claim 4 below, movant's Blackberry cell phone was permissibly seized from his vehicle during his arrest. (Cr-DE#497:253). The government then was able to obtain a search and seizure warrant to allow officials to turn the phone on, and obtain any relevant information from it. (CV-DE#32-2:2). This relevant information included the phone number attached to the cell phone, which was submitted into evidence by Special Agent George Kissell. (Cr-DE#497:253). As previously discussed, numerous certified business records were also entered into evidence to support the government's position that the phone seized from the vehicle was, in fact, movant's cell phone. (Cr-DE#478:218-219).

Thus, even if counsel's performance could in some way be construed as deficient for failing to file a motion to suppress, movant fails to demonstrate a reasonable probability that but for counsel's alleged deficiency that outcome at trial would have been different. This is so because of the plethora of evidence to support movant's connection to the phone number at issue, and because evidence to support this connection was obtained by means other than by way of an alleged "unlawful search" as movant now claims. Strickland, supra. at 694 (In order to satisfy the prejudice prong, the movant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Therefore, movant's claim should be dismissed as it warrants no habeas relief.

In **claim 4**, movant alleges that he received ineffective assistance of counsel, where his lawyer failed to file a motion to suppress evidence obtained from a cell phone which was acquired

through an illegal search and seizure of movant's 1988 Lincoln Continental during his arrest. (Cv-DE#8:9). More specifically, movant argues that agents only had an arrest warrant for him, but not a search warrant, and as such, the search of his car was unlawful. (Id.).

The Fourth Amendment guarantees that individuals will be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. Amend. IV. However, it is well settled law that law enforcement officers may stop an individual if they have a reasonable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity. Terry v. Ohio, 392 U.S. 1, 22-24 (1968). If a vehicle is operated in any fashion to give a police officer probable cause to believe that a traffic rule, regulation, or statute has been violated, a stop of the vehicle is per se justified, even if the officer does have ulterior motives. United States v. Whren, 517 U.S. 806 (1996); United States v. Williams, 876 F.2d 1521, 1524 (11 Cir. 1989); United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999). Where the initial traffic stop is legal, the officer has "the duty to investigate suspicious circumstances that then [come] to his attention." United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991). Additionally, police are "entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants." Simmons, 172 F.3d at 778.

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." See Maryland v. Dyson, 527

U.S. 465, 466, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999). However, searches of vehicles are, in certain circumstances, an established exception to the warrant requirement. Id. at 466. Under the "automobile exception," if (1) a car is "readily mobile and (2) probable cause exists to believe it contains contraband, the Fourth Amendment ... permits the police to search the vehicle without more." Id. at 467. Officers can search any container in an operational car without a warrant if they have probable cause to believe that the container holds evidence of a crime. United States v. Goddard, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); California v. Acevedo, 500 U.S. 565, 579-80 (1991); United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003).

Another exception to the warrant requirement exists for inventory searches, conducted pursuant to an established procedure, on legally impounded vehicles. South Dakota v. Opperman, 428 U.S. 364, 372-73 (1976). This type of search is done to (1) protect the vehicle owner's property while he remains in police custody, (2) protect the police against claims over lost property, and (3) protect the police from any potential dangers. Id. At 369. Moreover, courts have recognized that standard inventory searches often include an examination of the glove compartment, since it is a place often used for registration documents and other valuables. Id. At 372.

Review of the record reveals, as previously discussed, that movant's Blackberry cell phone was seized from his vehicle on the date of his arrest. (Cr-DE#497:253). It does not appear that movant was in his vehicle at the time of his arrest, as it was parked outside his home. (CV-DE#32-1). The phone number associated with

the phone was tied to "Donk City Detailing," a corporation for which movant was a registered agent. (Cr-DE#478:217-219). The phone was seized based on the fact that movant had been observed driving his 1998 Lincoln Continental to facilitate the drug trafficking activities for which he was being arrested. (DE#32-1:2). During an inventory search of the vehicle, Special Agent Kissell located the phone and submitted it to the evidence custodian for safekeeping. (Id.:4).

In his reply, movant claims that the phone was not in plain view, and as such, the agents did not have the authority to seize it from the armrest during the inventory search. However, as previously discussed, standard inventory searches often include examinations of areas not in plain view, including glove compartments. Moreover, the record is clear that the movant had been observed using the vehicle to facilitate his drug trafficking activities, and as such, the government legally impounded it as evidence. There is nothing of record to suggest that taking the movant's phone into evidence constituted an impermissible inventory search. Furthermore, the government then was later able to obtain an actual search and seizure warrant to allow officials to turn the phone on, and obtain any relevant information from it. (Cv-DE#32-2:2). Thus, even if it can be said that counsel should have moved to suppress the cell phone, there is no indication that such a motion would have been granted. Therefore, counsel's performance was not deficient for failing to contest what appears to have been a valid inventory search.

Moreover, even if counsel had moved to suppress the evidence and the court granted the motion, the government likely still would have been able to submit the MetroPCS records showing that Donk

City Detailing was the subscriber of the phone number on the wiretap. (Cr-DE#478:218). The government also would have been able to submit certified records from the Florida Department of State for Donk City Detailing which showed that movant was the corporation's registered agent. (Id.:217-219). As such, there still would have been a multitude of evidence, even without the phone, to show that movant was connected to the phone number used on the wiretap. Thus, given this other evidence, movant fails to establish that but for counsel's alleged deficiency, the outcome at trial would have been different under the second prong of <u>Strickland</u>. Movant's claim should be denied as it warrants no habeas relief.

In **claim 5**, movant alleges that counsel was ineffective for failing to file a motion for release of Brady material. (Cv-DE#8:15). More specifically, movant claims that subsequent to his arrest, he told counsel how agents removed items from his trunk that could have been exculpatory, including Donk City Detailing business cards that included movant's nickname as "cheese." (Id.).

It is well settled that success on a claim of prosecutorial misconduct requires a showing that the conduct infected the trial with unfairness as to make the resulting conviction a denial of due process. <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987)(<u>quoting</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). The conduct must be examined to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." <u>United States v. Simtob</u>, 901 F.2d 799, 806 (9 Cir. 1990).

The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is "the narrow

34

one of due process, and not the broad exercise of supervisory power." Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)). The Supreme Court has stated that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). Thus, the federal habeas court must determine whether the prosecutor's actions were so egregious that his misconduct amounted to a denial of constitutional due process. Id.

Of course, a defendant is denied due process when a state knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959). To succeed in showing a due process violation from the prosecution's failure to disclose material exculpatory evidence, the petitioner must establish that (1) evidence was suppressed, (2) the evidence was favorable to the defense, and (3) the evidence was material either to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Undisclosed evidence is material if there exists a reasonable probability that the result of the proceedings would have been different had the evidence been disclosed to the defense. See East v. Johnson, 123 F.3d 235, 237 (5 Cir. 1997).

Here, it appears that movant means to allege that had counsel filed a motion for release of Brady material, that the government then would have been required to provide the evidence of the Donk City business cards which showed movant's nickname as "cheese." (Cv-DE#8:15). It appears that he means to suggest that these business cards constituted exculpatory evidence because they would have showed that his nickname was "cheese," and not "Long," a

nickname which was used on the wiretap. (Id.). As previously discussed, there is no reason to suggest that such evidence would have actually been exculpatory. As will be discussed in more detail in claim 11, there was strong evidence presented at trial to show that movant actually was "Long" on the wiretap, and simply because he may have used another nickname in other situations does not mean that he could not have been the "Long" who was part of the conspiracy.

Moreover, movant fails to show that this "exculpatory" evidence was deliberately suppressed. As previously discussed, agents removed the business cards and other personal property from movant's vehicle and gave the items to his neighbor, Fletcher Johnson. (CV-DE#32:2). Movant fails to allege that there was any basis for the officers involved to believe that these business cards, which appeared to have been part of movant's personal property not associated with the drug conspiracy, constituted exculpatory evidence.  As such, movant fails to establish the requirements under Brady v. Maryland, 373 U.S. 83, 87 (1963). Counsel cannot be faulted for failing to file a motion for disclosure of Brady material, when the evidence requested fails to meet the actual requirements under Brady.

Furthermore, movant fails to establish a reasonable probability that the result of the proceedings would have been different had this evidence been disclosed to the defense. See East v. Johnson, 123 F.3d 235, 237 (5 Cir. 1997). As will be discussed in claim 11, there was substantial evidence presented to show that movant was, in fact, "Long" on the wiretap. This evidence would not have been overcome by business cards showing that movant went by a different nickname, such that there is a reasonable probability

that it would have resulted in his acquittal. As such, movant's claim fails under both prongs of Strickland.

In **claim 6**, movant asserts that he received ineffective assistance of counsel, where his lawyer failed to object of the introduction of Donk City Detailing business records. (Cv-DE#8:15). Specifically, movant claims that counsel should have objected because the records were not authenticated and that they had no signature from his uncle, Alfred Barnes. (Id.).

Federal Rule of Evidence 803(6) allows admission of business records "if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business to make the ... record." Federal Rule of Evidence 902(11) permits a party to authenticate business records with a written declaration of a records custodian or other qualified person, as long as the party provides notice of intention to the adverse party, and makes the record and declaration available for inspection sufficiently in advance of their offer into evidence.

Review of the record reveals, as discussed in claims 3 and 4, that the government obtained certified business records via MetroPCS for movant's phone. (Cr-DE#478:218). The government also obtained, and submitted into evidence, certified records from the Florida Department of State for Donk City Detailing. (Id.:218). Movant seems to allege that these records were not properly authenticated because they were not signed by his uncle, Alfred Barnes. However, as referenced above, business records may be admitted into evidence pursuant to Federal Rule of Evidence 803(6) if the records are kept in the course of regularly conducted business activity. Moreover, those records may be admitted by way of a written declaration by a records custodian pursuant to Federal

Rule of Evidence 902(11). Here, there is no indication that the records submitted by the government were not records kept in the course of the regular practice of business. In fact, the records submitted in this case were from a phone company and a government agency, and were related to Donk City Detailing.

Thus, counsel cannot be deemed ineffective for failing to raise an issue which has no merit. It is not professionally unreasonable for a lawyer to fail to pursue issues which have little or no chance of success, and a criminal defendant is not prejudiced by counsel's failure to pursue non-meritorious claims or those on which they likely would not have prevailed. See, generally, Strickland, 466 U.S. at 690 ("counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"); Knowles v. Mirzayance, 129 S.Ct. 1411, 1422 (2009)(the law does not require counsel to raise every available non-frivolous defense); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Bolender v.Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994)("[I]t is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance" of counsel); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992)(failure to raise meritless issues cannot prejudice a client); Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990)(counsel is not required to raise meritless issues); Iron Wing v. United States, 34 F.3d 662, 665 (8th Cir. 1994)(movant not prejudiced by counsel's failure to file motion to suppress that would have been denied); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994)(counsel's failure to make futile motions does not constitute ineffective assistance); United States v. Hart, 933 F.2d 80, 83 (1st Cir. 1991)(counsel is not required to waste the court's time with futile or frivolous

motions); <u>U.S. v. Lora-Pena</u>, 375 Fed.Appx. 242, 245-46 (3rd Cir. 2010); <u>U.S. v. Frost</u>, 355 Fed.Appx. 230, 234 (10th Cir. 2009); <u>Berry v. U.S.</u>, 281 Fed.Appx. 967, 969 (11th Cir. 2008); <u>Shell v. United States</u>, 448 F.3d 951, 955 (7th Cir. 2006); <u>United States v. Molina</u>, 934 F.2d 1440, 1447 (9th Cir. 1994). Therefore, movant's claim 6 should be denied as it warrants no habeas relief.

In **claim 7**, movant claims that counsel was ineffective for failing to object to the introduction of the MetroPCS subscriber records for Donk City Detailing. (Cr-DE#8:15). Specifically, movant claims that if counsel had objected on the grounds that the business was not in his name, and thus not properly authenticated, his defense would not have been prejudiced. (Id.).

As previously discussed in claim 6, movant provides no support to suggest that the records were not properly authenticated and entered into evidence pursuant to Federal Rules of Evidence 803(b) and 902(11). Simply because movant's name may have not been on the subscriber records, does not mean that the records themselves are not admissible. Rather, it appears that the Florida Department of State records regarding Donk City were submitted to demonstrate that movant was the registered agent for Donk City. (Cr-DE#478:219). As such, the phone records for Donk City's number could thereby be traced back to the movant. Thus, again, counsel cannot be faulted for failing to raise a nonmeritorious objection with the court, and movant fails to establish that counsel's performance was deficient under the first prong of <u>Strickland</u>. <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11th Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection).

Moreover, because such an objection would have been meritless, movant cannot claim that he was prejudiced by counsel's failure to

object. Any objection by counsel based on authentication or relevance grounds would have been overruled. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992)(failure to raise meritless issues cannot prejudice a client). As previously discussed, the record is clear that the records were both properly authenticated and relevant to show movant's connection to the phone records. As such, movant's claim fails under both prongs of Strickland and should be denied as it warrants no habeas relief.

In **claim 8**, movant asserts that counsel failed to properly object to the Blackberry phone being illegally seized from his vehicle. (Cr-DE#8:15). More specifically, movant claims that Special Agent Perez, who he claims seized the phone, did not request movant's consent to search the vehicle and did not have a search warrant. (Id.).

As previously discussed in claim 1, there is no evidence to suggests that a "Special Agent Perez" was involved in movant's arrest, or in the search of his vehicle. Moreover, as previously discussed in claim 4, the search of movant's vehicle was done pursuant to an inventory search, and even if the phone had not been submitted into evidence, the government still would have been able to submit records which would have shown that he was connected to the phone number used on the wiretap. Thus, movant's claim that counsel was deficient for failing to object to the phone being illegally seized from his vehicle is without merit, and should be denied.

In **claim 9**, movant asserts that he was denied effective assistance of counsel where his lawyer filed a motion to continue his trial. (Cv-DE#8:15). More specifically, movant claims that he informed counsel that he was ready to go to trial, and told the

court that he was ready to proceed to trial with his co-defendants on June 28, 2012. (Id.). In his reply, movant suggests that he was prejudiced by this because the prosecution was then able to get a search warrant for the cell phone on September 10, 2012, prior to the new trial date. (CV-DE#22:9).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. Strickland v. Washington, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When assessing counsel's performance under Strickland, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance...." Burt v. Titlow, ___ U.S. ___, 134 S.Ct. 10, 18, 187 L.Ed.2d 348 (2013).

Moreover, it is well-settled that reasonable strategic choices by counsel regarding the various plausible options in a given case are "virtually unchallengeable." Strickland, 466 U.S. at 690. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Adams v. Wainwright, 709 F.2d 1443, 1145 (11th Cir. 1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. See Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001)(holding that counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be

considered sound trial strategy")(quoting Darden v. Wainwright, 477 U.S. 168 (1986)).

Here, review of the record reveals that counsel filed a motion to continue trial on June 29, 2012, in anticipation of the July 16, 2012 trial date. (Cr-DE#297). Counsel requested the continuance on the basis that (1) he would be on vacation from July 9 through July 13, 2012, (2) the case was complicated because it involved total 8 co-defendants, and (3) he would not be prepared for trial by the July 16, 2012 trial date. (Id.). None of the co-defendant's counsels had any objection to the sixty day continuance. (Id.:2).

Thus, based on review of the record, there is no evidence to suggest that counsel's decision to request a continuance was "so patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d 1443, 1145 (11th Cir. 1983). In retrospect, had counsel not requested the continuance, the government may not have been able to obtain the warrant to search the phone prior to trial. However, counsel's tactical decision to request a continuance cannot support a collateral claim of ineffective assistance. See Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000). Moreover, movant was alleged to have participated in a drug trafficking conspiracy that involved numerous co-defendants, and he was facing two felony charges, count 1 of which included a possible maximum term of life imprisonment. (PSI ¶123). Had counsel not requested the continuance, and had he been unprepared for trial, he very well may have been ineffective, especially given the seriousness of the charges pending against movant.

To the extent movant claims in his reply that counsel "should have severanced [him] from the other defendants instead of

violating [his] speedy trial rights," such a claim is without merit. (Cv-DE#22:8).

A district court may sever the trial of co-defendants whenever it appears that a defendant would be prejudiced by his joint trial with a co-defendant. See Fed.R.Cr.P.14.[8] "Nevertheless, because of the well-settled principle that it is preferred that persons who are charged together should also be tried together, particularly in conspiracy cases, the denial of a motion for severance will be reversed only for abuse of discretion." United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990)(quotation and citation omitted); see also Zafiro v. United States, 506 U.S. 534, 537 (1993)(noting "a preference in the federal system for joint trials of defendants who are indicted together"); see also, e.g., United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005); United States v. Cassano, 132 F.3d 646, 651 (11th Cir. 1998).

Moreover, federal relief predicated upon a violation of the Sixth Amendment right to a speedy trial requires a demonstration that a Constitutional violation of the Sixth Amendment has occurred. Barker v. Wingo, 407 U.S. 514, 530 (1972); United States v. Roggio, 863 F.2d 41 (11 Cir.), cert. denied, 490 U.S. 1109, reh'q denied, 492 U.S. 933 (1989). The factors relevant in determining whether a Sixth Amendment federal speedy trial violation has occurred are 1) the length of delay, 2) the reason for delay, 3) the defendant's assertion of his or her right to

---

[8]The Rule states, in relevant part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

speedy trial, and 4) the prejudice to the defendant. <u>Barker</u>, <u>supra</u>. The length of delay must be "presumptively prejudicial" to trigger an inquiry into the other three factors.  <u>Ringstaff v. Howard</u>, 885 F.2d 1542 (11 Cir. 1989), *cert. denied,* 496 U.S. 927 (1990). Under the Speedy Trial Act, the trial of an indicted defendant commence within 70 days from later of either the filing of the indictment or the date on which the defendant first appears in court. <u>See</u> 18 U.S.C. §3161(c)(1).

Here, movant provides no support for his claim that counsel should have moved to sever his case from that of his co-defendants', and he fails to allege that he how he was prejudiced by a joint trial as required by <u>Fed.R.Cr.P</u>.14.In fact, review of the record reveals that the period of delay resulting from movant's motion for continuance was in the interests of justice and thus, was excludable time under the Speedy Trial Act. (Cr-DE#324). Finally, he fails to allege or explain how the filing a motion to sever relates to counsel's filing of a motion for a continuance. Consequently, no Sixth Amendment violation has been shown. Movant's claim 9 should be denied.

In **claim 10,** movant asserts that counsel failed to properly object to the photo of the Blackberry cell phone coming into evidence because there was no warrant for the phone to be powered on. (Cv-DE#8:15). More specifically, movant claims that he was prejudiced because the evidence from the phone was used to connect him to the voice of the speaker on the wire tap. (Id.:16).

As previously discussed in claims 3 and 4, the government later obtained a valid search warrant to power on the phone that was recovered from movant's vehicle. (Cv-DE#32-2:2). Specifically, the warrant states that the phone was believed to conceal "any/all

contacts, numbers dialed, numbers received, recent call logs, text messages and other electronic communications...and other information related" to the offense. (Id.). Thus, based on the valid warrant, the government was able to power on the phone and obtain the phone number associated with the phone. Moreover, even if at the time the photo was taken, there was no warrant to turn the phone on, and counsel had moved to suppress the evidence, there still would have been support for the government's claim that the phone was tied to movant's phone number because it was later able to legally access the phone. (Cr-DE#497:253-254; CV-DE#32-2:2). Based on the foregoing, movant fails to establish ineffective assistance of counsel under <u>Strickland</u>. Therefore, it should be denied.[9]

In **claim 11**, movant alleges that he received ineffective assistance of counsel, where his lawyer failed to object to the prosecutor referring to him as "Longman" during the closing argument. (Cv-DE#8:16). Movant claims counsel should have objected because there was no testimony or evidence introduced to show that movant went by the nickname "Longman." (Id.).

While this court does not have before it the recordings of the calls that were intercepted via wiretap and submitted into evidence, it does have the government's appellate brief, which summarizes several of the phone calls involving movant. (Cv-DE#32-3). This court has no reason to question the credibility or reliability of the quoted portions of the phone calls included in the government's brief, and only utilizes them below because the

---

[9]To the extent that movant suggests that counsel requested a continuance because the prosecutor lied and said that there was new evidence regarding movant's guilt, such a claim is insufficiently plead. He provides no facts in his amended motion to support such a bare, conclusory allegation. <u>See Boyd v. Comm'r, Ala. Dep't of Corr's</u>, 697 F.3d 1320, 1333-34 (11th Cir. 2012).

transcripts of the phone recordings are not available for this court to directly review.

DEA Special Agent Sargent testified that during the four months of listening to the intercepted communications on the wiretap, she began to recognize the participants' voices. (Cr-DE#469:187). Agent Sargent testified that the following phone call (GX-26W)[9] between co-defendant Barbary and movant took place:

```
Barbary:  You ready for me?
Barnes:   Not yet.
Barbary:  What you got baby?
Barnes:   I got three left.
Barbary:  That's what you had last time I talked to you.
Barnes:   No...I was on four...
Barbary:  ...damn Long. It almost three weeks baby.
```

(Cr-DE#478:17;See also Cv-DE#32-3:36-37). Agent Sargent also testified that the following phone call (GX-26HH) between co-defendant Barbary and movant took place:

```
Barbary:  What's up Long?
Barnes:   ...damn  dead  man...ain't  shit  all
          week...losing all of my damn customer. One got
          killed in jail.
```

(Cr-DE#478:20; See also Cv-DE#32-3:37-38). On cross examination, Sargent further testified that she believed this was Barnes referring to his customers in the drug business. (Cr-DE#478:162-164). Moreover, Sargent testified that the following phone call took place between two of movant's co-defendants:

---

[9]The abbreviation "GX" used to refer to the government exhibits admitted at trial.

```
           Barbary: What's up Unc?
           Holt: Long here in my face.
           Barbary: Alright, tell him what's up.
           Holt: [aside] he say what's up.
           Barnes: Hello?
           Barbary: Yeah, what's happening?...
```

(Cr-DE#480:77; See also Cv-DE#32-3:44).

The above conversations are only three of the many phone calls where movant was referenced as the nickname "Long." (Cr-DE#478:217-219; Cr-DE#479:141-142). As previously discussed, movant was tied to the wiretap through his phone number, and certified records were correctly admitted to show that he was a registered agent of the corporation using the phone number at issue. Thus, review of the record reveals that movant was in fact the "Long" who participated in the conspiracy. Counsel cannot be deemed ineffective for failing to object to the prosecutor's reference to movant as "Long Man" because such an argument would have been without merit. (Cr-DE#720:15). Therefore, movant's claim should be denied as it warrants no habeas relief.

In **claim 12**, movant asserts that he received ineffective assistance of counsel, where his lawyer failed to move to dismiss counts 1 and 2 of the indictment because DEA Agent Sargent falsely testified that the defendant made the phone calls on the wiretap. (Cv-DE#8:16).

This claim is wholly without merit. Movant fails to establish any evidence to suggest that Agent Sargent was, in fact, lying when she testified that movant was the one who made the phone calls. As previously discussed in claim 11, it was determined that movant's phone number was one of the ones intercepted by the government

wiretap on Barbary's phones. Moreover, movant was referred to as
"Long" during many of the conversations that were intercepted.
Thus, movant provides this court with no support to suggest that
Agent Sargent committed perjury by testifying that movant was
"Long." Movant's claim should be denied as it warrants no habeas
corpus relief.

In **claim 13**, movant asserts that he received ineffective
assistance of counsel, where his lawyer failed to file a motion to
challenge the validity of his arrest warrant. (Cv-DE#8:16).
Essentially, he claims that there was no probable cause for his
arrest. (Id.).

Movant provides no support for the claim that there was no
probable cause for his arrest. As previously discussed, prior to
the arrest of movant and his co-defendants, there was an
investigation of Andre Barbary, which led to a wiretap of his
telephone. (Cr-DE#469:183). From August 24, 2011 through January
2012 officials were able to intercept communications with Barbary's
phones. (Id.:184-185). During the four months of the wiretap,
Sargent was able to begin to recognize some of the voices of the
individuals who were in communication with Barbary regarding the
drug trafficking activities. (Id.:187). As previously discussed in
claim 11 and others, movant was identified as one of those who
participated in the drug trafficking conspiracy with Barbary, and
as such, he was indicted by a grand jury for conspiracy to
distribute 5 kilograms or more of cocaine and oxycodone, and
conspiracy to use a communication facility to further the
conspiracy. (Cr-DE#3:8). There is simply no evidence to support
movant's claim that there was no probable cause for his arrest.

To the extent movant suggests that there was no probable cause for his arrest because the Donk City business cards showed that his nickname was "cheese" and not "Long," such a claim is without merit for the reasons previously cited herein. Since there was, in fact, probable cause for movant's arrest, counsel cannot be faulted for failing to raise the nonmeritorious issue of a lack of probable cause with the court. Movant's claim should be denied as it is meritless.

In **claim 14**, movant alleges that he was denied effective assistance of counsel, where his lawyer failed to file a motion to reconsider reports with respect to Amber Sargent, David Weeks, Wayne Gerhardt from the FBI, and Sergeant Hattie French. (Cv-DE#8:16). More specifically, movant claims that after counsel learned that David Weeks interviewed Lamar Bennett, the government's star witness, with Amber Sargent, he failed to file a motion to receive the report of the interview prior to trial. (Id.).

The government argues in its response that it did not receive evidence about the interview report/notes prior to trial. (Cv-DE#32:21). On cross examination of Agent Weeks, he testified that he takes detailed notes about each interview that he does in his reports, and stated that the notes of his interview with Bennett were available so that the defendants could see them. (Cr-DE#468:27). The defendants then moved the court to order the government to provide them with Agent Weeks's notes, to which the government objected, arguing that the notes were not discoverable. (Cr-DE#468:115-118). Ultimately, the court ordered that because the government failed to object to Weeks's testimony about the notes, it had waived any objection to the defendants' counsels receiving the notes. (Id.:115-118, 131-143). The government then complied

with the court's order to produce the notes. (Id.:286-287; Cv-DE#469:230).

Here, movant wholly fails to allege that he was prejudiced by the delay in receiving Agent Weeks's report. He fails to allege how receiving the report earlier would have changed counsel's trial strategy or preparation of the case. Finally, he fails to allege that any facts contained in the report were material to his defense and/or would have made a difference at trial such that there is a reasonable likelihood that the outcome would have been different. Simply put, movant's claim is insufficiently pled.

Moreover, review of the record reveals that counsel was given the opportunity to question Bennett, after he had received the report, when he was called by co-defendant Barbary during the defense case. (Cr-DE#719:178-201). Counsel also briefly called Bennett as a witness. (Id.). Thus, counsel was able to ask Bennett any relevant questions regarding the report, as he had it in his possession at the time of this questioning. (Id.). Given that counsel was given the opportunity question Bennett on the report, movant is unable to establish any prejudice from the delay in receiving it. Movant's claim should be denied.

In **claim 15**, movant alleges that he was denied effective assistance of counsel, where his lawyer failed to object to the authenticity of the wiretap recordings without a proper foundation having been laid. (Cv-DE#8). More specifically, movant alleges that the only evidence against him was the wiretap, and therefore he was prejudiced by counsel's failure to object to it. (Id.).

Federal Rule of Evidence 901(a) requires that the authenticity or identification of evidence be established before its

50

admissibility can be satisfied. Moreover, Federal Rule of Evidence 901(b)(1)-(10) goes on to delineate how evidence can satisfy the admissibility requirement. Specifically 901(b)(6) allows evidence about telephone conversations to be admitted when there is evidence that a call was made to the number assigned to a particular person or business as any given time.

Review of the record reveals that Agent Amber Sargent testified that an investigation of movant's co-defendant, Andre Barbary, led to a wiretap of his telephone. (Cr-DE#469:183). She explained that from August 24, 2011 through January 2012 officials were able to intercept communications with Barbary's phone. (Id.:184-185). During the four months of the wiretap, Sargent was able to begin to recognize some of the voices of the individuals who were in communication with Barbary regarding the drug trafficking activities. (Id.:187). The government then asked to move a disk copy of the wiretap information, which had been reviewed by Sargent, into evidence. (Id.:188). The court then entered the copy into evidence. (Id.:189).

There is nothing of the above exchange to suggest that the government failed to lay a proper foundation regarding the wiretap evidence. In fact, the record shows that Agent Sargent was familiar with the wiretap, and had been involved in monitoring the communications to Barbary's phone for nearly four months. As such, she was familiar enough with the information in order to properly authenticate it. Because counsel cannot be faulted for failing to raise a nonmeritorious objection, movant's claim 15 warrants no habeas corpus relief and should be denied.

In **claim 16**, movant alleges that counsel was ineffective for failing to submit his own wiretap transcripts removing movant's

name and replacing his name with the name of the actual speaker, "Long." (Cv-DE#8:17). Again, movant claims there was no evidence submitted in trial that he was known as "Long," and as such, he was prejudiced by counsel's failure to submit his own, corrected transcripts. (Id.).

Review of the record reveals that after the court admitted the transcripts which movant alleges counsel should have contested, the court gave an instruction to the jury as follows:

> The transcripts also purport to identify the speakers engaged in the conversations. I have admitted the transcripts for the limited and secondary purpose of helping you to follow the content of the conversations as you listen to the recordings, and to help you identify the speakers, but you are specifically instructed that whether the transcripts correctly reflect the content of the conversations or the identity of the speakers is entirely for you to decide based on your own evaluation of the testimony that you have heard about the preparation of the transcripts and from your own examination of the transcripts in relation to hearing the recordings themselves as the primary evidence of their own context. If you determine that the transcripts are in any way incorrect or unreliable, you should disregard them to that extent.

(Cr-DE#469:193-194).

Because the court gave a clarifying instruction, counsel was not ineffective for failing to submit his own corrected transcripts. Any prejudice to the movant was cured by the court's clear instruction that the jury was to make its own determinations about the identity of the speakers. As such, counsel's performance for failing to submit corrected transcripts did not fall below the objective standard of reasonableness demanded by the Constitution.

See <u>Strickland</u>, <u>supra</u>; <u>See also</u> <u>Cummings v. Sec'y for Dep't of</u>
<u>Corr's</u>, 588 F.3d 1331, 1356 (11th Cir. 2009)("To establish
deficient performance, a defendant must show that his counsel's
representation fell below an objective standard of reasonableness
in light of prevailing professional norms at the time the
representation took place.")

In **claims 17 and 18,** movant alleges (1) the trial court erred
when it admitted a Blue Ray DVD (Exhibit 37B) into evidence which
contained four segments of video which were taken from a copy of
the original hard drive (Exhibit 37A) previously submitted to the
jury, and (2) counsel was ineffective for failing to object to the
court's erroneous ruling (Cv-DE#8:17). Movant further claims that
counsel's failure to object to the DVD prejudiced his defense
because the video made it appear that he only came to "this
location to meet to conduct drug transactions." (Id.).

Firstly, movant's claim of trial court error in claim 17 is
procedurally barred as it was not raised on direct appeal. As a
general matter, a criminal defendant must assert an available
challenge to a conviction or sentence on direct appeal or be barred
from raising the challenge in a section 2255 proceeding. <u>Greene v.</u>
<u>United States</u>, 880 F.2d 1299, 1305 (11th Cir. 1989). Movant fails
to establish any objective cause or actual prejudice for failing to
raise this claim on direct appeal. <u>Murray v. Carrier</u>, 477 U.S. 478,
485-86, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (citations
omitted). Nevertheless, where the merits of the claims may be
reached and readily disposed of, judicial economy has dictated
reaching the merits of the claim while acknowledging the procedural
default and bar in the alternative. As such, movant's claim of
trial court error will be addressed on the merits below.

Federal Rule of Evidence 403 allows a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, by confusing the issues, misleading the jury, causing undue delay, wasting time, or needlessly presenting cumulative evidence. Fed.R.Evid. 403.

Review of the record reveals that Agent Sargent testified that as part of the conspiracy surveillance, agents installed a camera on a telephone pole near co-defendant Barbary's home. (Cr-DE#478:66-67). The camera was able to monitor the area outside Barbary's home throughout the wiretap investigation. (Id.). Agent Weeks then testified that the pole cameras were installed by the DEA to capture material relevant to the investigation. (Cr-DE#479:165-167). Weeks further explained that Exhibit 37B was directly copied from Exhibit 37A, and included specific dates of surveillance on the pole camera outside of Barbary's home. (Id.:166). When the government attempted to admit Exhibit 37B into evidence, co-defendant's counsel objected, arguing that it was simply highlights of Exhibit 37A and that it would prejudice the defense because the jurors were unlikely to sift through all of the surveillance in Exhibit 37A, and were likely to only review Exhibit 37B. (Cr-DE#479:165-167). The court reasoned that from an evidentiary standpoint, there was no issue with submitting a highlight video into evidence because, in essence, the possible prejudice of the highlight video did not outweigh its probative value.

There is no factual basis in the record to support movant's claim that the trial court erred when it admitted Exhibit 37B. Rather, the record shows that Exhibit 37B was a highlight video of several relevant interactions that were captured by DEA surveillance. While the lengthier Exhibit 37A showed the relevant

54

interactions on video, as well as all others, 37B was intended to prevent the jury needlessly wasting time to review 37A. Fed.R.Evid. 403. There is nothing to suggest that the inclusion of 37B was prejudicial to the defense. As such, the trial court did not err by admitting the evidence, and counsel cannot be faulted for failing to object to a nonmeritorious issue. Movant's claims 17 and 18 should be denied on the merits.

In **claim 19**, movant asserts that he received ineffective assistance of counsel, where his lawyer failed to object to the government's relabeling of a CD which contained the GPS location data obtained from co-defendant Lewis's Toyota Corolla. (Cv-DE#8:17). More specifically, movant alleges that counsel failed to object to Exhibits 27A, 27B, and 27C, all of which involved evidence obtained from GPS monitoring of co-defendant Lewis's vehicle. (Id.).

Review of the record reveals that a GPS tracker was placed on co-defendant Lewis's Toyota Corolla during the course of the investigation of the drug trafficking conspiracy. (Cr-DE#478:148,166). While Agent Phillips acknowledged that the GPS did not tell agents who was in the vehicle at any given time, it did allow them to monitor where the vehicle was moving. (Id.:166). Exhibit 27A was a CD which contained the GPS location data for the device placed on Lewis's car, 27B was a graphical representation of that GPS information obtained from September 23, 2011, and 27C and 27D were graphical map representations of the GPS information from September 29, 2011 and October 28, 2011, respectively. (Id.:166-167). During these dates of surveillance, co-defendant Lewis's vehicle made three trips to co-defendant Jackson's home in Fort Myers, Florida. (Cr-DE#478:191-216). Notably, during the second

trip, law enforcement officers seized 613.2 grams of cocaine from her vehicle. (Cr-DE#479:103; Cr-DE#497:51).

When the government attempted to admit the exhibits, Lewis's counsel objected, alleging that the government had laid an improper predicate. (Id.168). The court then allowed movant's counsel to voir dire the witness on the predicate issues, and stated that it believed the government did, in fact, need to bring in the tech person who downloaded the evidence from the server. (Id.:170-176). Lewis's counsel spoke to the other defendants' lawyers about the issue, and the defense collectively agreed that the tech person did not need to be brought in to testify. (Id.:177). Lewis's counsel then withdrew his objection. (Id.:178).

Lewis's counsel then objected on the basis that the exhibits at issue were labeled "Carolla." (Id.:178). The government then agreed to relabel the exhibits. (Id.). It seems that Lewis's counsel wanted the labels of the exhibits to reflect that a vehicle *registered* to Lewis was involved, as opposed to a vehicle *driven* by Lewis. (Id.:191). Agent Sargent clarified the labeling, by stating that the tracking device was not, in fact, attached to Monica Lewis, but was instead attached only to her vehicle. (Id.).

Review of the record above reveals that counsel was not ineffective for failing to challenge the subject evidence. Thus, the parties ultimately agreed that bringing in the technical agent to testify that he was the one that transferred the GPS information to the DEA server would be unnecessary. (Id.:177-178). Had counsel objected, the government would have then brought in the technical agent to lay the proper predicate. (Id.:176). There is no indication whatsoever that the government would have been unable to meet its evidentiary burden. As such, movant fails to establish

56

that he was prejudiced by counsel's alleged deficient performance under the second prong of Strickland.

Moreover, movant wholly fails to allege any facts to support his allegation that he was prejudiced by the "relabeling" of the exhibits. In fact, review of the record reveals that the relabeling of the exhibits served to distance Lewis, movant's co-defendant at trial, from one of the vehicles that was involved in the alleged drug trafficking conspiracy. (Id.:190-191). The government even clarified multiple times that agents could not definitively tell who was driving the vehicle. (Id.). Thus, movant fails to establish that counsel's performance was deficient under Strickland. This is especially true because movant wholly fails to allege any facts to support his bare and conclusory claim. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012). Movant's claim should be denied on the merits.

In **claim 20**, movant alleges that counsel was ineffective for failing to object to Amber Sargent's hearsay testimony that he was the speaker on the wiretap. (Cv-DE#8:17). More specifically, movant asserts that counsel should have asked what movant's nickname was, and his failure to ask the question allowed Sargent to testify that movant was, in fact, "Long" on the wiretap. (Id.).

As previously discussed in claim 11, there was clear evidence presented by the government to prove that movant was, in fact, "Long" on the  intercepted calls. Agent Sargent became familiar with movant's voice over the course of the investigation and wiretap, and phone records supported the government's assertion that the phone number used to communicate on the wiretap was registered to movant. As such, counsel cannot be faulted for failing to raise a nonmeritorious "hearsay" objection with the

court. Furthermore, movant cannot establish that he was prejudiced by counsel's failure to raise such an objection because there was clear, non-hearsay evidence to support the testimony.

Moreover, review of the record reveals that at the movant's pretrial detention hearing, Sargent testified that his nickname was "Long." (Cr-DE#112:32). Thus, it is logical to assume that had counsel questioned Sargent regarding movant's nickname, she would have testified consistently with her testimony at the pretrial hearing. Furthermore, as previously discussed in claim 16, the jury was instructed that it was to decide "whether the transcripts correctly reflect[ed] the content of the conversations or the identity of the speakers." (Cr-DE#469:193-194). Given the foregoing, movant's claim fails under both prongs of <u>Strickland</u>, and it should be denied.

In **claim 21**, movant asserts that counsel was ineffective for failing to object to Agent Sargent's testimony at the pre=trial detention hearing that movant's nickname was "Long." (Cv-DE#8:17). Specifically, movant again claims that the box of business cards, removed from his car by Agent Phillips, shows that his nickname is "Cheese" and not "Long." (Id.:17-18).

As previously discussed multiple times throughout this report there was a multitude of evidence to support the government's argument that movant was "Long" on the wiretap, and that he was extensively involving in the drug trafficking conspiracy with his co-defendants. As such, movant fails to establish that had counsel objected to Sargent's identification of movant as "Long" at the pretrial detention hearing, that such an objection would have been sustained, and he would not have been indicted.

Furthermore, movant's claim that Agent Phillips removed the box of business cards from his car has no factual support in the record whatsoever. As previously discussed in claims 2 and 5, even if the business cards showed that movant's nickname was "Cheese," it does not necessarily follow that he could not have been "Long." Moreover, there is no indication whatsoever that Agent Phillips was even at the scene of movant's arrest and thus, he could not have hidden the "exculpatory" business cards. (Cv-DE#32-1:3). This is so because it appears from the investigation report that Agent Phillips did not become involved until movant was taken to the police station. (Id.).

Based on the foregoing evidence, it was not unreasonable for counsel to object to the admissibility of the evidence which supported the proposition that he was "Long." Thus, movant's claim fails under <u>Strickland</u> and should be denied.

In **claim 22**, movant alleges that counsel was ineffective for failing to file a motion to sever his case from that of his co-defendants. (Cv-DE#8:18). He further alleges that he was prejudiced because movant's co-defendant Holt was stopped with over $70,000, co-defendant Hartfield was caught at an airport with over 9000 prescription pills, co-defendant Lewis was caught with 612 grams of cocaine, and co-defendant Barbary was married to a member of the grand jury. (Id.).

A district court may sever the trial of co-defendants whenever it appears that a defendant would be prejudiced by his joint trial with a co-defendant. <u>See</u> <u>Fed.R.Cr.P.</u>14.[10] "Nevertheless, because of

---

[10]The Rule states, in relevant part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in

the well-settled principle that it is preferred that persons who are charged together should also be tried together, particularly in conspiracy cases, the denial of a motion for severance will be reversed only for abuse of discretion." United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990)(quotation and citation omitted); see also Zafiro v. United States, 506 U.S. 534, 537 (1993)(noting "a preference in the federal system for joint trials of defendants who are indicted together"); see also, e.g., United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005); United States v. Cassano, 132 F.3d 646, 651 (11th Cir. 1998).

The principle behind the foregoing rule is that joint trials, where appropriate, promote judicial economy. See United States v. Meester, 762 F.2d 867, 883 (11th Cir. 1985); see also United States v. Lopez, 649 F.3d 1222, 1233 (11th Cir. 2011) (recognizing that joint trials play a "vital role in the criminal justice system" as they reduce the risk of inconsistent verdicts, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources). Therefore, a Rule 14 motion to sever must balance the prejudice a defendant may suffer from a joint trial against the public interest in judicial economy and efficiency. See United States v. Zaldivar, No. 2:06-CR-50FTM, 2006 WL 2884099, at *2 (M.D.Fla. Oct. 9, 2006) (citing United States v. Lehder-Rivas, 955 F.2d 1510, 1521 (11th Cir. 1992)).

A severance may be granted only if a defendant can demonstrate that a joint trial will result in "specific and compelling

---

an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed.R.Cr.P. 14.

prejudice" to his or her defense. <u>United States v. Eyster</u>, 948 F.2d 1196, 1214 (11th Cir. 1991). "Compelling prejudice" requires a defendant to establish that a joint trial "would actually prejudice the defendant and that a severance is the only proper remedy for that prejudice jury instructions or some other remedy short of severance will not work." <u>Lopez</u>, 649 F.3d at 1234; United <u>States v. Schlei</u>, 122 F.3d 944, 984 (11ᵗʰ Cir. 1997)(quotation and citation omitted). The defendant bears the "heavy burden" to show that a jury will be unable, due to the complex nature of the evidence, to make an individualized determination of guilt for each defendant. <u>United States v. Francis</u>, 131 F.3d 1452, 1459 (11th Cir. 1997). Bare and conclusory allegations of spillover prejudice will not satisfy this heavy burden. <u>Id</u>. In other words, the "potential for prejudice from a joint trial is not enough." <u>Lopez</u>, 649 F.3d at 1234 (determining that defendants charged with drug-trafficking had not established compelling prejudice due to joinder with co-defendants charged for capital murder). Furthermore, although severance may be warranted in some cases, the Court held that less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. <u>See</u> <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987).

In the case at bar, the jury was instructed as follows:

Each count in the indictment charges a separate crime against one or more of the defendants. You must consider each crime and the evidence relating to it separately. You must consider the case of each defendant separately and individually.

If you find the defendant guilty of one crime, that must not affect your verdict for any other crime or any other defendant. I caution you that each defendant is on trial only for the specific crimes charged in the indictment. You are here to determine, from the evidence in this

case, whether each defendant is guilty or not guilty of
those specific crimes.


(Cr-DE#720:186).


Thus, the jury was specifically instructed that it was to determine
the guilt of each individual defendant, and not to allow the
evidence against one defendant to influence the guilt of another.
Movant provides no support for the claim that this instruction was
insufficient. Lopez, 649 F.3d at 1234.


    Moreover, as summarized by the Eleventh Circuit, movant was an
integral part of the conspiracy at issue, participating in numerous
phone calls with co-defendant Barbary to arrange the execution of
various drug sales. (Cr-DE#786:5,17-30). In the case at bar, movant
bears the burden to show that the jury was unable to make an
individualized determination of his guilt. United States v.
Francis, 131 F.3d at 1459. Movant makes no such showing here.
Moreover, his bare and conclusory allegation of "prejudice" is
insufficient to satisfy his burden. Id. As such, movant cannot
overcome "[t]he general rule in this circuit...that defendants who
are jointly indicted should be tried together...particularly
[in]...conspiracy cases." United States v. Castillo-Valencia, 917
F.2d 494, 498 (11th Cir. 1990).


    Since there were no grounds for severance any motion to sever
would have been denied. In fact, the court denied co-defendant
Jackson's motion to sever on the basis that Jackson was properly
joined as a member of the conspiracy, and that the charges against
him "relate[d] to, and originate[d] from, the same overall master
scheme." (Cr-DE#211:2). Such is the case bar here. Thus, counsel

62

cannot be deemed ineffective for failing to pursue this meritless issue. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001); United States v. Sanders, 165 F.3d 248, 253 (3rd Cir. 1999).

Even if counsel had successfully moved to sever, any claim that the outcome would have been different is speculative. The evidence of the scheme was overwhelming and included the direct testimony of a co-conspirator, as well as many recorded phone calls. There is little likelihood that the outcome would have been different had the movant been tried alone. Under these circumstances, no deficient performance or prejudice pursuant to Strickland has been established arising from counsel's failure to file a motion to sever the trials.

In **claim 23**, movant asserts that counsel was ineffective for failing to file a motion to request a Franks hearing regarding the wiretap, GPS, and search warrant applications pursuant to Franks v. Delaware, 438 U.S. 154 (1978). (Cv-DE#8:18). Specifically, movant claims that he was prejudiced because Agent Sargent and Agent Weeks lied and misled the judge into allowing the wire tap, GPS monitoring, and search warrants. (Id.).

In Franks, the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine admissibility of the fruits of the search. Franks, 438 U.S. at 171-72, 98 S.Ct. at 2684-85; see also United States v. Sarras, 575 F.3d 1191, 1218 (11th Cir. 2009).

To have required a <u>Franks</u> evidentiary hearing,

>the [defendant's] attack must be more than conclusory and
>must be supported by more than a mere desire to
>cross-examine. There must be allegations of deliberate
>falsehood or of reckless disregard for the truth, and
>those allegations must be accompanied by an offer of
>proof. They should point out specifically the portion of
>the warrant affidavit that is claimed to be false; and
>they should be accompanied by a statement of supporting
>reasons. Affidavits or sworn or otherwise reliable
>statements of witnesses should be furnished, or their
>absence satisfactorily explained. Allegations of
>negligence or innocent mistake are insufficient. The
>deliberate falsity or reckless disregard whose
>impeachment is permitted ... is only that of the affiant,
>not of any nongovernmental informant. Finally, if these
>requirements are met, and if, when material that is the
>subject of the alleged falsity or reckless disregard is
>set to one side, there remains sufficient content in the
>warrant affidavit to support a finding of probable cause,
>no hearing is required. On the other hand, if the
>remaining content is insufficient, the defendant is
>entitled, under the Fourth and Fourteenth Amendments, to
>his hearing. Whether he will prevail at that hearing is,
>of course, another issue.

<u>Franks</u>, 438 U.S. at 171-72, 98 S.Ct. at 2684-85; <u>O'Ferrell v.
United States</u>, 253 F.3d 1257, 1267 (11th Cir. 2001)("[T]o prevail
in a Franks challenge one must establish (1) that information
contained in an affidavit was untrue, (2) that inclusion of the
untrue information was either deliberate or in 'reckless disregard
for the truth,' and (3) that the untrue information was an
essential element of the probable cause showing relied upon by the
judicial officer in issuing the search warrant.") (citation
omitted).

As applied here, movant has failed to establish that the
information contained in the affidavits submitted to obtain the

wire tap, GPS and search warrants, was untrue. He provides no citation to the record nor to the subject affidavits to demonstrate that the information contained therein was false. Moreover, not only does the movant fail to show that the contents of the affidavits were untrue, he has also not shown that it was either deliberate or in reckless disregard for the truth. See O'Ferrell, 253 F.3d at 1267 (citation omitted). Movant has offered no evidence that the agents completing the affidavits for the search warrants acted with a reckless disregard for the truth—nor frankly what that truth may be. Finally, the test in Franks requires movant to establish that "the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant." O'Ferrell, 253 F.3d at 1267 (emphasis added). No such showing has been made here. In conclusion, no showing has been made of a Franks violation.

Because movant fails to supply this court with any support for his claim that there was a Franks violation, counsel cannot be deemed ineffective for failing to move the court for a Franks hearing when there appears to have been no good faith basis to file such a motion. Furthermore, because there was no basis for such a motion, movant fails to establish that there is a reasonable likelihood that the motion would have been granted. Therefore, movant has failed to establish either deficient performance or prejudice pursuant to Strickland and is thus entitled to no relief on this claim.

In **claim 24**, movant alleges that counsel as ineffective for failing to object to the introduction of Exhibit 9, which included a DEA list of chemicals. (Cv-DE#8:18). Movant claims that he was prejudiced because this exhibit was not properly authenticated before it was submitted into evidence. (Id.).

Review of the record reveals that agents became aware that co-defendant Willie Hartfield had plans to travel to Boston, Massachusetts as part of the drug trafficking conspiracy. (Cr-DE#469;33,38-40). Upon inspection, a large number of oxycodone pills was found in Hartfield's bag. (Id.:44). Exhibit 9, a laboratory report showing that most of the pills seized from Hartfield contained oxycodone, was admitted into evidence without objection. (Id.:50,52-53).

It appears that the parties agreed to stipulate to the entry of Exhibit 9 into evidence. (Id.:50). This is likely because the defendants' counsels knew that the government would be able to bring in an expert witness who could testify to the results of the analysis of the pills obtained from Hartfield's bag, and as such, did not wish to waste the court's time in requiring such a witness to be present. Thus, had counsel objected to the authentication issue, the government most likely would have brought in the witness needed to properly authenticate the report, and the evidence would have been admitted.

Based on the foregoing, movant fails to establish that he was prejudiced by counsel's failure to object to the admissibility of this evidence under the second prong of Strickland. Thus, movant's claim should be denied.

In **claim 25,** movant asserts that the district court erred in admitted Donk City Detailing's business records because the government failed to give written notice to the defense pursuant to Fed.R.Evid. 902(11). (Cv-DE#8:18). Specifically, movant claims that the records were not signed by the alleged registered agent, his uncle, Alfred Barnes. (Id.).

As in claim 17, movant's claim of trial court error is procedurally defaulted from review in the instant habeas petition because it was not raised on direct appeal. <u>Greene v. United States</u>, 880 F.2d 1299, 1305 (11th Cir. 1989). Nevertheless, review of the record, as was thoroughly discussed in claim 6, demonstrates that the government properly authenticated the Donk City Detailing documents, and they were properly admitted into evidence. Moreover, evidence supports the claim that the government did, in fact, give written notice to counsel that it intended to admit various business records into evidence via affidavits in compliance with Federal Rules of Evidence 803(6) and 902(11). (Cv-DE#32-4:2). As such, movant's claim of trial court error is belied by the record and should be denied.

In **claim 26**, movant asserts that counsel was ineffective for failing to provide movant with discovery that he was unaware of. (Cv-DE#8:18). Movant claims that he was prejudiced because he was not able to review this "discovery" prior to trial. (Id.).

Here, movant fails to plead the claim at issue with any specificity whatsoever. A §2255 movant must provide factual support for his contentions regarding counsel's performance. <u>Smith v. White</u>, 815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test. <u>See</u> <u>Boyd v. Comm'r, Ala. Dep't of Corr's</u>, 697 F.3d 1320, 1333-34 (11th Cir. 2012). Thus, movant's vague reference to "discovery" which he was not provided, is simply not sufficient. This court has no specific facts before it regarding which pieces of discovery movant claims that counsel failed to provide him, and movant fails to supply this court with any evidence whatsoever to show that counsel failed to provide him such discovery.

In his supplemental reply, movant argues generally that he is entitled to an evidentiary hearing on this issue because it is his word against counsel's when it comes to whether or not he was actually provided this "discovery." (Cr-DE#28:2-3). This claim is without merit. This court is not required to hold evidentiary hearings on issues which are insufficiently pled, as bare and conclusory claims are subject to dismissal. See Boyd, 697 F.3d 1333 (11th Cir. 2012). Movant's claim should be denied.

In **claim 27**, movant claims that counsel was ineffective for failing to file a motion for summary judgment based on (a) falling asleep in trial, (b) allowing jurors John Forsett and John Gary to sleep in trial without notifying the judge, and © allowing audience members to coach government witnesses without notifying the judge. (Cv-DE#8:22).

First, it is well settled that there is no summary judgment procedure in criminal cases. United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 2012). Since there is no valid procedure through which counsel could have filed a motion for summary judgment, he cannot be deemed ineffective for failing to raise the issue under the first prong of Strickland. This first part of movant's claim is without merit.

Moreover, movant provides no support for his claim that counsel was sleeping during the trial. He further fails to articulate, in any manner, how he was prejudiced by counsel's alleged sleeping. Thus, this second part of movant's claim is subject to dismissal as bare and conclusory. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012).

Furthermore, movant fails to provide this court with any support for his proposition that counsel was ineffective for failing to notify the court that jurors J.F. and J.G. were sleeping during the trial. There is no indication from review of the record that any of the defendants' counsels, let alone movant's counsel, notified the judge about these "sleeping" jurors. (Cr-DE#s468,469, 478,479,480,496,497,498,716,717,718,719,720). Moreover, a sleeping juror does not violate a defendant's due process rights unless he can demonstrate that he was prejudiced by the sleeping to the extent that he did not receive a fair trial. <u>United States v. Fernandez-Hernandez</u>, 652 F.3d 56, 75 (1st Cir. 2011). Movant makes no such showing here. Likewise, movant fails to allege any facts to support his claim that government witnesses were coached by members of the audience. As such, his claim that counsel was ineffective for failing to raise these issues is bare and conclusory. Based on the foregoing, movant's claim 27 is insufficiently pled and should be denied as it warrants no habeas corpus relief.

In **claim 28**, movant asserts that counsel was ineffective for failing to inform him that he intended to call movant's uncle, Alfred Barnes, as a witness. (Cv-DE#8:19). More specifically, movant claims that counsel failed to prepare Alfred Barnes to testify, and that movant was ultimately prejudiced by his false testimony. (Id.).

Review of the record reveals that movant's counsel did, in fact, call movant's uncle, Alfred Barnes, as a witness. (Cr-DE#498:196-206). He testified that he formed the Donk City Detailing corporation for movant. (Id.:199). According to Alfred Barnes, a "Donk," is a big, old car. (Id.:200). He also testified that movant had a few assets, which included an old, nonoperational "Donk," which was in movant's backyard, and his 1998 Lincoln

Continental which was impounded by the police (Id.:200-204). On cross-examination, he denied that he was the one who participated in any of the telephone calls that were intercepted by the wiretap. (Id.:205-206). In closing, counsel argued that it was unreasonable for the jury to conclude that he was involved in the conspiracy because if he had been, he would have been able to afford a better lifestyle than the one of poverty that he was actually living. (Cr-DE#720:72).

It is well-settled that reasonable strategic choices by counsel regarding the various plausible options in a given case are "virtually unchallengeable." Strickland, 466 U.S. at 690. Here, it is obvious from review of the record that counsel made a strategic decision to call Alfred Barnes as a witness in order to show that movant's lifestyle did not reflect that he was selling drugs as part of the conspiracy. (Id.). Furthermore, movant fails to provide any support for his claim that counsel failed to prepare Alfred Barnes to testify. Rather, review of the record reveals that he was able to answer all of counsel's questions on direct examination in a coherent and logical manner. (Cr-DE#498:196-206).

In his supplemental reply, movant alleges that his uncle's testimony was false because the car in movant's backyard was an "Oldsmobile" and not a "Donk." (CV-DE#22:9). Moreover, he claims that Alfred Barnes could have testified that when he went to movant's neighbors' home to retrieve the property removed from movant's vehicle, that the neighbors stated that they could not give him the items because "S/A Phillips told them only [to] give it to [movant's] parents." (Id.). Movant wholly fails to demonstrate how this evidence, or lack thereof, prejudiced him in any manner. Whether or not the automobile in his backyard was a "Donk" has nothing to do with the question of whether or not he was

involved in the drug trafficking conspiracy. Moreover, as previously discussed in claim 21, there is no evidence to suggest that Agent Phillips was actually present at the scene of movant's arrest, and there is simply no evidence in the record to support his claim that the business cards, which were part of his property taken out of his vehicle, were "exculpatory" in nature. As such, movant's counsel cannot be deemed ineffective for failing to address these issues during Alfred Barnes's testimony.

Moreover, movant's claim that counsel was ineffective because he put his uncle on the stand "to remove [him] as a speaker on the wiretap," is without merit. (CV-DE#22:9). As previously discussed, there was a plethora of evidence to support the government's claim that movant was, in fact, the speaker on the wiretap. Furthermore, it is clear from the record that counsel made a strategic decision to call movant's uncle as a witness. While his uncle denied on cross-examination that he had anything to do with the intercepted phone calls, counsel's testimony also provided the jury with information regarding movant's financial situation, which was clearly inconsistent with his participation in the conspiracy. Thus, the information regarding the phone calls was elicited by the government on cross-examination, and not by counsel. Based on the foregoing, movant fails to demonstrate that counsel's performance was deficient, and his claim should be denied.

In **claim 29**, movant asserts that counsel was ineffective for questioning the government's agents about the meaning of the alleged code words "crazy," "regular," and "things." (Cv-DE#8:19). Specifically, movant argues that counsel had submitted a motion in limine to preclude government agents from offering opinion testimony, and that movant's questioning regarding these code words prejudiced him. (Id.).

The decision to cross-examine a witness and the manner in which it is conducted are tactical decisions "well within the discretion of a defense attorney." Fugate v. Head, 261 F.3d 1206, 1219 (11th Cir. 2001)(quoting, Messer v. Kemp, 760 F.2d 1080, 1090 (11th Cir. 1985)). Moreover, in order to establish prejudice, a habeas petitioner must show at least one "specific instance where cross-examination arguably could have affected the outcome . . . of the trial." Id. (quoting Messer, 760 F.2d at 1090); see, also, Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir. 1985), cert. denied, 479 U.S. 918, (1996)(a defendant's conclusory allegations regarding the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel).

Review of the record reveals that counsel did, in fact, submit a motion to preclude government witnesses from testifying regarding the various "code words" used on the wiretap. (Cr-DE#435). In the motion, counsel argued that Amber Sargent's testimony regarding the code words at a pretrial hearing was not specific enough to satisfy the reliability components of Fed.R.Evid. 702. (Id.:4). Many of movant's co-defendants moved to adopt the motion filed by counsel. (Cr-DE#437,443,446). At the hearing on the motion in limine, the parties agreed that the government would not submit expert testimony regarding what the code words "crazy" and "regular" meant when used on the wiretap because Sargent could not state at the pretrial hearing what those terms meant. (Cr-DE#682:43-45). However, the government stated that it intended to present expert testimony regarding other code words that were used. (Cr-DE#682:50).

On cross-examination, counsel questioned Agent Weeks about the fact that Agent Sargent did not know what "regular" referred to. (Cv-DE#496:40). He also questioned Agent Weeks about Sargent's

testimony that she did not know what "crazy" referred to. (Id.:48).
Thus, the record is clear that counsel elicited these responses in
order to attempt to damage the credibility of Sargent, who was the
main DEA agent involved in the case. Such a strategic choice was a
tactical decision well within counsel's discretion. Fugate v. Head,
261 F.3d 1206, 1219 (11th Cir. 2001).

Furthermore, movant fails to provide this court with any
evidence that had counsel not questioned the witnesses about these
code words, that there is a reasonable likelihood that the outcome
at trial would have been different. This is so because of the
strong evidence against movant which showed that he was an integral
part of the drug trafficking conspiracy. As such, movant's claim is
without merit and should be denied.

In **claim 30**, movant asserts that he received ineffective
assistance of counsel, where his lawyer failed to object to David
O'Neill's testimony that Willie Hartfield confessed to him that
Andre Barbary supplied him with prescription pills to take to
Boston. (Cv-DE#8:19). Specifically, movant claims that this
testimony violated the Bruton rule since both of the defendants
went to trial together. (Id.). Movant further claims that he was
prejudiced because he was connected to Hartfield because Sargent
testified that she saw movant in a photo with him from Andre
Barbary's wedding. (Id.).

In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1628
(1968), the Supreme Court found that the Confrontation Clause of
the Sixth Amendment was violated by the admission of an
incriminating statement of a non-testifying codefendant in a joint
trial, even where the jury was given a cautionary instruction not
to consider the statement as evidence against the defendant. Bruton

v. United States, 391 U.S. at 135; See also, Gray v. Maryland, 523
U.S. 185, 190 (1998). In so holding, the Supreme Court reasons that
"in the context of a joint trial we cannot accept limiting
instructions as an adequate substitute for [the defendant's]
constitutional right of cross-examination," which is the finest
tool for testing the credibility of a co-defendant's statement
against the defendant. Bruton v. United States, 391 U.S. at 137, 88
S.CT. 1628. The Supreme Court has made clear that if a Bruton
violation so severely impacts the right of an accused to a fair
trial, then a new trial is required, unless the error was harmless
beyond a reasonable doubt. See e.g., Shneble v. Florida, 405 U.S.
427, 92 S.Ct. 1056 (1972)(noting that a new trial is required if
"there is a reasonable probability that the improperly admitted
evidence contributed to the conviction.").

Here, review of the record reveals that the government agreed
to redact the portions of Hartfield's confession which incriminated
Andre Barbary. (Cr-DE#380). At trial, there was no mention of
Barbary when David O'Neill testified regarding Hartfield's
confession. (Cr-DE#469:45-46). Thus, the record is clear that there
was no Bruton violation and counsel cannot be faulted for failing
to raise a nonmeritorious objection.

Moreover, further review of the record reveals that on cross-
examination, counsel did question Amber Sargent regarding whether
she had knowledge about a connection between Willie Hartfield and
movant. (Cr-DE#478:97-98). After Sargent denied knowing about the
connection, counsel asked her if there was any evidence that they
had ever been in the same room together, to which Sargent responded
that she had seen a photo of the two of them from Barbary's
wedding. (Id.). While in retrospect, counsel should have perhaps
not have asked the question, counsel continued to ask questions on

cross-examination which served to distance movant from Hartfield and the drugs that were obtained from him when he was apprehended in Boston. (Id.:98-100). As such, movant fails to demonstrate any prejudice that he suffered from this evidence such that the outcome at trial would have been different. Movant's claim should be denied.

In **claim 31**, movant alleges that he received ineffective assistance of counsel, where his lawyer failed to object to the 612 grams of cocaine that were introduced into evidence. (Cv-DE#8:19). More specifically, movant claims that agents testified that the 612 grams obtained from co-defendant Lewis's vehicle was hard, powdered cocaine, while the laboratory expert testified that he changed the form of the cocaine in order to test it, which prejudiced movant. (Id.).

First, movant wholly fails to provide any support for his claim that he was prejudiced by the laboratory expert changing the form of the cocaine. Such bare and conclusory allegations are insufficient to establish ineffective assistance of counsel. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012).

Moreover, review of the record reveals that Agent Phillips testified on direct examination that he field tested the evidence obtained from two vacuum sealed bags found in co-defendant Lewis's vehicle, and that the evidence was positive for cocaine. (Cr-DE#479:103). Peter Echevarria, a senior forensic chemist with the DEA, then testified that when he analyzes powders, he has to grind and pass them through a mesh sieve so that the sample is more uniform for analysis. (Cr-DE#497:51). According to Echevarria, the white powder obtained from the evidence seized from Lewis's car was

cocaine hydrochloride. (Id.:49). None of the defendants objected to the admission of Echevarria's lab reports or conclusions. (Id.:50).

Thus, the record is clear that Echevarria needed to change the form of the evidence in order to ensure proper testing. There does not appear to have been anything improper about Echevarria changing the form of the evidence in order to test it. Moreover, as previously mentioned, movant fails to articulate, in any manner, how the admission of this evidence prejudiced him. Had the evidence been tested in its original form, there is no reason to believe that the outcome of the test would have been different such that there is a reasonable likelihood that movant would have been found not guilty at trial. Based on the foregoing, movant's claim should be denied.

In **claim 32**, movant asserts that counsel was ineffective for failing to cross examine Willie Perez. (Cv-DE#8:19). Movant claims that he was prejudiced by this failure, because cross-examination would have exposed the "truth of the matter at the arrest[,] the other DEA agents present, and the wire tap which was not authenticated."

As previously discussed in claim 1, no one by the name of Willie Perez appears to have been present at the scene of movant's arrest. While a Telecommunications Specialist named William Perez was listed as a witness on the government's potential witness list, there is no indication that he was present at the scene of arrest. (Cr-DE#419). Thus, counsel cannot be faulted for failing to call an officer who was not even on scene at the time of his arrest. Moreover, movant fails to establish with any specificity what "other DEA agents present" counsel should have cross-examined. Finally, as previously discussed in claim 15, the evidence from the

wiretap was properly authenticated and counsel was not ineffective for failing to object to the admission of such evidence. Thus, movant fails to demonstrate that counsel's performance was ineffective under <u>Strickland</u>, and his claim should be denied.

In **claim 33**, movant asserts that he received ineffective assistance of counsel, where his lawyer failed to cross examine DEA supervisor, Mike Gannon. (CV-DE#8:19). Had counsel cross-examined Gannon, movant claims that he could have testified regarding which agents were sent to effectuate his arrest, "placing Todd Phillips and S/A Perez at the scene contradicting S/A Kissell's testimony[,] [that] [h]e was the only DEA agent present and if the agents had to log in to watch the videos of the pole cameras on 155th and 139th street." (Id.:20).

First, review of the record reveals that Mike Gannon was not called as a witness by any of the parties. (Cr-DE#s468,469, 478,479,480,496,497,498,716,717,718,719,720). Moreover, movant fails to provide this court with any sworn witness affidavit to support his claim regarding Gannon's purported testimony. <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)(A defendant cannot simply state that an alleged witness's testimony would have been favorable, but rather must generally present the alleged testimony by the witness or an affidavit). As such, movant fails to make a sufficient factual showing substantiating the proposed witness testimony. <u>United States v. Schaflander</u>, 743 F.2d 714, 721 (9th Cir. 1984). On this basis alone, movant fails to establish a valid claim of ineffective assistance of counsel for failing to call Gannon as a witness.

Furthermore, as previously discussed in claim 1, there is plainly no evidence to suggest that any individual by the name of

Perez was present at the time of movant's arrest, and there is no evidence to show that Agent Phillips was involved prior to movant being brought to the police station. (Cv-DE#32-1:3). It is unclear what movant means when he suggests "the agents had to log in to watch the videos of the pole cameras on 155th and 139th street," nor is it clear how testimony regarding this fact would have been relevant to the circumstances of movant's arrest. Given the deficiencies of movant's claim, he fails to establish that he received ineffective assistance of counsel and his claim should be denied.

In **claim 34**, movant asserts that he received ineffective assistance of counsel, where his lawyer failed to cross-examine and impeach David O'Neill. (Cv-DE#8:20). Movant claims that he was prejudiced because O'Neill testified that movant was the speaker on the wiretap "who was trying to procure pills from someone in Dayton." (Id.).

Review of the record reveals that David O'Neill, a DEA agent in the New England Criminal Division, apprehended co-defendant Willie Hartfield in Boston, where he was found with a large amount of Oxycodone pills. (Cr-DE#469:28-52). Later on, Agent Sargent testified that movant and co-defendant Barbary engaged in a conversation on the wiretap which went as follows:

```
Barbary:  did you with the boy about the thing?
Barnes:   ...Got the [person] at the doctor now....
Barbary:  How much they suppose to get today?
Barnes:   300...he say he got five doctors.
Barbary:  That's what I'm saying. How many people he got
          at the doctor right now?
Barnes:   Three.
Barbary:  And they only getting 300?
Barnes:   [after saying the people from Daytona were
          getting three, he did not know about the
```

```
                              others]  She  got  them  going  to  like  give
                              different doctors.
            Barbary:    Alright.
```

(GX-26I;Cv-DE#32-2:32-33).  Sargent  testified  that  she  believed movant  and  co-defendant  Barbary  during  this  conversation  were referring to doctor shopping for oxycodone pills. (Cr-DE#469:226).

As previously discussed in claim 11, the evidence presented at trial showed that movant was, in fact, one of the speakers in the calls  intercepted  by  the  wiretap.  In  claim  15  specifically,  Agent Sargent's testimony laid the proper foundation  to authenticate the wiretap  calls,  as  she  was  familiar  with  the  voices  of  the participants of the conspiracy. Moreover, phone records supported movant's connection to the phone number that was used, and there was plenty of evidence to support that his nickname was "Long."

In the claim at bar, movant fails to establish what questions counsel  should  asked  David  O'Neill  on  cross-examination,  and further fails to demonstrate how O'Neill could have been impeached. Given that the evidence showed that movant was, in fact, one of the speakers on the wiretap, it was not unreasonable for counsel to fail to cross-examine on this issue. Given the foregoing, movant fails to establish either prong of <u>Strickland</u> and his claim should be denied.

In **claim 35**, movant asserts that he received ineffective assistance of counsel, where his lawyer failed to cross examine Lee and Collier County Sheriff Officers. (Cv-DE#8:20). Movant claims that this testimony would have shown the jury that the items found in movant's vehicle should have been inventoried, rather than given to his neighbors. (Id.).

Review of the record reveals that various Lee and Collier County officers testified regarding various trips that co-defendants Holt and Lewis made to travel across the state to bring drugs to co-defendant Jackson, and money back to co-defendant Barbary. (Cr-DE#468:171-184, 192, 234-59). During two of Jackson's trips, officers were able to find tens of thousands of dollars in cash. (Id.). Moreover, during one of Lewis's trips, officers were able to find 612 grams of cocaine in her vehicle. (Cr-DE#479:103;Cr-DE#497:51).

It seems that movant means to allege that the procedure used to inventory his vehicle was improper, and that the Lee County officers would have been able to testify to such. As previously discussed in claim 4, there was nothing improper about the inventory search that was done on movant's vehicle, and even if there had been, he was not prejudiced at trial such that the outcome would have been different had counsel contested the search. Moreover, the business cards, which he claims were "exculpatory," would not have served to exculpate him from the crime. As such, counsel was not ineffective for failing to cross-examine these other officers on their inventory search procedures. Movant's claim should be denied.

In **claim 36**, movant alleges that counsel was ineffective for failing to file a Rule 33 motion at the same time he filed a Rule 29 motion. (Cv-DE#8:20). Movant claims that his counsel was the only attorney that did not file a Rule 33 after the trial was over. (Id.). Again, he claims the "business cards" were new evidence not used in trial. (Id.).

Rule 33 of the Federal Rules of Criminal Procedure provides:

80

(a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

(b) Time to File.

(1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed.R.Crim.P. 33.

Furthermore, the Eleventh Circuit has consistently required that the following five elements be satisfied to justify a new trial on the basis of newly discovered evidence:

(1) the evidence must be discovered following trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the courts; and (5) the evidence must be of such a nature that a new trial would probably produce a new result.

See U.S. v. Reed, 887 F.2d 1398 (1989).

Here, movant seems to suggest that the business cards that were removed from his vehicle constituted "newly discovered evidence" because had the business cards been admitted into evidence, they would have proven that his nickname was "Cheese" and not "Long," the nickname tied to him on the wiretap. This argument

81

is unavailing for many reasons as previously discussed in claims 2 and 11. This evidence would have merely served to differ from Agent Sargent's testimony that movant was "Long," but would not have necessarily, or "probably" resulted in an acquittal at trial. Moreover, movant himself admits that he was aware of this evidence, and that he informed counsel about the circumstances surrounding his arrest in an attorney interview after his arrest. (Cv-DE#8:5). As such, the evidence was not "discovered following trial" so as to meet the requirements for a valid Rule 33 motion.

Given the foregoing, it is clear that counsel was not ineffective for failing to raise a Rule 33 motion on the basis that the business cards were newly discovered evidence, as such a Rule 33 motion would have been nonmeritorious. Movant's claim should be denied.

In **claim 37**, movant alleges that he received ineffective assistance of counsel, where his lawyer failed to object to him being shackled at trial in front of the jury. (Cv-DE#8:20). Movant claims that the shackles prejudiced him because he was discouraged from testifying for fear that the shackles would become visible to the jury on the witness stand. (Id.).

As a general rule, a defendant in a criminal trial has the right to appear before the jury free from physical restraints. Illinois v. Allen, 397 U.S. 337, 334 (1970). However, a criminal defendant's right to be free from physical restraints is not absolute, and under some circumstances, including where courtroom security is at issue, shackling may be necessary. United States v. Mayes, 158 F.3d 1215, 1225 (11th Cir. 1998).

82

The Eleventh Circuit has held that if the jury cannot see the defendant's shackles, there can be no prejudice. See, Moon v. Head, 285 F.3d 1301, 1317-1318 (11th Cir. 2002), citing, e.g., United States v. Mayes, 158 F.3d 1215, 1226-27 (11th Cir. 1998)("The restraints in this case were not capable of affecting the jury's attitude in any way because the district court took great care to ensure that the jury never saw that the appellants were wearing leg irons."); United States v. Brazel, 102 F.3d 1120, 1158 (11th Cir. 1997)("Defendants, moreover, have not shown a realistic likelihood that they were prejudiced by what was done, the shackles having been screened from view.").

Moreover, federal courts have also held that a defendant is not necessarily prejudiced by a brief or incidental viewing by the jury of the defendant in shackles. United States v. Pina, 844 F.2d 1, 8 (1st Cir. 1988) (brief exposure of defendant in shackles to three jurors not inherently prejudicial); Holbrook v. Flynn, 106 S.Ct. 1340, 1345-1346 (1986).

Movant's claim that the jury could see his shackles is contradicted by a sworn affidavit, provided by the respondent, in which Pamela Hardy, a Deputy United States Marshal, states that she was present for the entirety of the trial, and that the defendants' shackles were not visible to the jury. (Cv-DE#32-5:2). Hardy claims that the defendants' were shackled based on a concern for security, and that there was a table skirt blocking the view of any of the shackles from the jury. (Id.).

However, even when assuming that movant's shackles were visible to the jury, he fails to provide any support for his claim that he was prejudiced. As previously discussed, the mere fact of shackling does not necessary mean that a defendant was prejudiced.

Even by movant's own allegations, that he was sitting behind his lawyer, who was sitting at a table "with no tablecloths" does not indicate that the shackles were directly visible to the jury. This is especially true because by movant's own admission, he was sitting behind his lawyer, which may have possibly blocked the view of the shackles to the jury.

Moreover, movant claims that he was dissuaded from testifying because of the shackles, but fails to allege what he would have testified to. He provides no indication what the substance of his testimony would have been, or what it would have added to his defense.  Under these circumstances, even assuming arguendo that the jury briefly glimpsed the movant in shackles, the movant has not shown that he was prejudiced therefrom. Thus, he has again failed to establish prejudice pursuant to Strickland arising from counsel's failure to pursue this issue. He is thus entitled to no relief on this claim.

In **claim 38**, movant asserts that he received ineffective assistance of counsel, where his lawyer failed to object to perjured testimony, and further failed to impeach Agent Sargent. (Cv-DE#8:20). More specifically, movant alleges again that Agent Phillips and Agent Kissell had knowledge about the business cards, and that Agent Sargent lied when she stated that movant was "Long" on the wiretap. (Id.:20-21).

Both of these claims have previously been address repeatedly throughout this report, most notably in claims 11, 12, 20, 21 and 34. Again, the record is clear that there was evidence to support the government's claim that movant was "Long" on the wiretap. Moreover, the movant's claim regarding the business cards has been thoroughly addressed in claim 5 of this report. Thus, movant fails

to establish that counsel's performance was deficient, and his claim should be denied.

In **claim 39**, movant asserts that he received ineffective assistance of counsel, where is lawyer failed to cross examine Lamar Bennett, "the government's star witness," and further failed to cross examine Amber Sargent. (Cv-DE#8:21). Specifically, movant claims that counsel should have asked both Bennett and Sargent about the nature of movant's nickname. (Id.).

Review of the record reveals that Lamar Bennett was a cooperating co-conspirator who pled guilty and received a sentence of 15 years, 8 months. (Cr-DE#468:50). Bennett's testimony implicated co-defendant Barbary and others, however failed to specifically implicate movant. (Id.:48-170). Given this evidence, it is likely that counsel made a strategic decision not to question Bennett regarding his knowledge about movant, because such questions would have served to make a connection between movant and Bennett, a major player in the conspiracy. As such, counsel was not ineffective for failing to question Bennett about movant's nickname. Moreover, as previously discussed at length, counsel was not ineffective for failing to question Agent Sargent about movant's nickname because the evidence supported the government's proposition that he was "Long" on the wiretap. As such, even if counsel had questioned Sargent about the nickname, there is no reasonable probability that the trial would have resulted in a not guilty verdict. Movant's claim should be denied.

In **claim 40**, movant claims that the district court erred by giving incorrect 404(b) instructions. (Cv-DE#8:21). Moreover, movant again asserts that counsel was ineffective for failing to argue that he was not the speaker on the wiretap. (CV-DE#8). He

seems to argue that had counsel argued that movant's nickname was not "Long," that the 404(b) evidence would not have been used against him. (Id.).

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, [or] identity ...." Fed.R.Evid. 404(b). Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. However, a movant makes intent and knowledge issues in a case by choosing to plead not guilty and go to trial. See United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998)("A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent...."); United States v. Jernigan, 341 F.3d 1273, 1281 n.7 (11th Cir. 2003).

In the claim at bar, review of the record reveals that prior to trial, the government argued that it should be permitted to elicit evidence of movant's prior convictions for possession of cocaine with intent to deliver and trafficking in cocaine. (Cr-DE#379). Counsel filed a motion in limine to exclude this evidence, and following an evidentiary hearing, the motion was denied. (Cr-DE#429; Cr-DE#682). At trial, the court admitted certified copies of movant's prior convictions, and argued in closing that these prior convictions showed that movant had an intent to distribute

cocaine. (Cr-DE#720:15). During the trial, the court instructed the jury as to the 404(b) evidence as follows:

> During the trial, the jury will hear, or did hear, evidence of acts done by the defendants on other occasions that may be similar to acts that the defendants are currently charged with. You must not consider any of this evidence to decide whether the defendants committed the acts charged now, but you may consider this evidence for other very limited purposes. If other evidence leads you to decide beyond a reasonable doubt that [the defendants] committed the charged acts, you may consider evidence of similar acts done on other occasions by the respective defendant to decide whether the respective defendant had the state of mind necessary to commit the crime charged.

(Cr-DE#720:177-178). Movant raised on direct appeal the claim of whether his prior convictions should have been admitted. (Cr-DE#786). The Eleventh Circuit Court of Appeals then held as follows:

> We find no abuse of discretion in the district court's admission of evidence of Barnes's 2002 felony drug convictions. Barnes's prior convictions for possession of cocaine with intent to deliver and trafficking in cocaine both occurred during the timeframe of the conspiracy alleged in the present case and involved the same drug—cocaine-as the present conspiracy. By pleading not guilty in this case, Barnes opened the door to the admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of his intent. See [Smith, 741 F.3d at 1225]. Moreover, contrary to Barnes's suggestion that the jury convicted him based on a propensity to deal in cocaine because there was a "lack of any real substantive evidence" against him, the numerous intercepted phone calls between Barnes and Barbary in which they discussed procuring and distributing cocaine and oxycodone overwhelming supported his convictions.

United States v. Holt, 777 F.3d 1247-1248, 1266-1267 (11th Cir. 2015).

Here, movant provides no support whatsoever for his argument that the instruction given to the jury was improper. Moreover, claims raised and considered on direct appeal preclude further review of the claims in a §2255 motion. See Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987). As such, this court is bound by the Eleventh Circuit's ruling that the trial court did not commit any error with respect to this issue. Thus, movant's claim of trial court error is barred from review in this proceeding and should therefore be denied.

Furthermore, as previously discussed in claim 11, the government's claim that movant was "Long" on the wiretap was supported by the evidence. Thus, it cannot be said that had counsel argued that movant was not the one on the wiretap, that the court would have disallowed the government from presenting the prior conviction evidence. As such, movant's claim fails under Strickland and should be denied.

In **claim 41**, movant alleges that the government failed to prove: (1) the movant conspired to distribute 500 grams or more of cocaine and oxycodone and (2) the movant used a communication facility in the commission of a drug trafficking offense. (Cv-DE#8:21). In addition, Movant again claims that he received ineffective assistance of counsel because there was no evidence on the wiretap that suggested he was "Long." (Id.).

Movant raised this claim on direct appeal, in which the Eleventh Circuit held as follows:

>Viewing the evidence in the light most favorable to the government, a jury reasonably could have found Barnes guilty of conspiring to distribute and possess with intent to distribute oxycodone and between 500 and 5,000 grams of cocaine and conspiring to use a communication facility to facilitate a narcotics crime. In multiple recorded phone calls with Barbary, Barnes used veiled language that a jury reasonably could infer referred to distributing cocaine and searching for sources to obtain oxycodone.

Holt, 777 F.3d 1259 (11th Cir. 2015).

Thus, the Eleventh Circuit has already held that there was sufficient evidence against him at trial. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000). Movant's claim of trial court error is barred from re-review in this proceeding, and should therefore be denied.

Moreover, review of the record reveals that counsel gave a thorough and well-reasoned closing argument in which he argued that the government had failed to prove that the "code words" intercepted on the wiretap related to drug trafficking. (Cr-DE#720:55-75). As previously discussed, counsel likely made a strategic decision to contest the substance of the intercepted calls rather than by contesting movant's identity on the wiretap. This is so because there was sufficient government evidence to tie movant to the phone number on the wiretap. Such a strategic decision was not unreasonable given the evidence against movant. Thus, counsel cannot be faulted for failing to raise this issue with the court, and movant's claim should be denied.

In **claim 42**, movant asserts that the evidence presented at trial constituted a fatal variance from the offense charged in the indictment. (Cv-DE#8:21). Specifically, he alleges that even when

viewed in the light most favorable to the government, it only was able to demonstrate various distinct conspiracies, and not the overarching conspiracy with which movant was charged in the indictment. (Id.).[11]

This claim was raised on direct appeal, in which the Eleventh Circuit held as follows:

> Viewing the evidence in the light most favorable to the government, the jury in this case could have found that a single conspiracy existed beyond a reasonable doubt. See Alred, 144 F.3d at 1414. First the evidence at trial that we describe above was sufficient to support the conclusion that Barbary and his various confederates, including Holt, Barnes, and Hartfield, operated toward a common goal to distribute cocaine and oxycodone in South Florida and Boston. Even assuming that Holt, Barnes, and Hartfield did not know every co-conspirator or participate in every stage of the conspiracy, the jury could have inferred that these defendants intentionally joined in the conspiracy's common goal and that Barbary, as a "key man," directed, coordinated, and facilitated the venture as a whole. See Richardson, 532 F.3d at 1285-1286.

Holt, 777 F.3d 1264 (11th Cir. 2015).

The court went on to find that the jury "reasonably could have found the existence of an underlying scheme, and that even if the jury could not have found a single conspiracy, the defendants failed to establish any substantial prejudice. Holt, 777 F.3d 1262-1264. Given the detailed foregoing findings, the movant has not demonstrated any support to warrant relitigation of the claim, which was already decided by the Eleventh Circuit. Thus, the claim is barred from review here.

---

[11]In addition, movant again claims that he received ineffective assistance of counsel, where his lawyer failed to argue that he was not "Long" on the wiretap. (Cv-DE#8:21). Movant's claim is without merit for the reasons that have been repeatedly stated throughout this report.

This is so because the presentation of the claim, in this §2255 proceeding, whether as a substantive issue, or in the guise of an ineffective assistance of counsel claim, adds nothing of substance which would justify a different result. See Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion), vacated on other grounds, 492 U.S. 913 (1989); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Webb v. United States, 510 F.2d 1097 (5th Cir. 1975); Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7 Cir. 1994); Graziano v. United States, 83 F.3d 587 (2d Cir. 1996)(Collateral attack on a final judgment in a criminal case is generally available under §2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.). Moreover, to the extent the challenges here are based on a slightly different factual basis or legal argument, for the reasons expressed herein, the claims should be summarily rejected as the movant cannot satisfy the prejudice prong of Strickland.

In **claim 43**, movant asserts that the district court erred when it allowed Agent Sargent to testify as an expert witness regarding the definition of various code words that were used on the wiretap. (Cv-DE#8:21). Movant claims that this invaded the province of the jury. (Id.). He further claims that he received ineffective assistance of counsel because his lawyer failed to argue that Sargent was not an expert who could identify him on video or by nickname. (Id.:22).

This claim was raised on direct appeal, in which the Eleventh Circuit held as follows:

> We cannot say that the district court erred, much less manifestly erred, in admitting Agent Sargent as an expert witness and permitting her to testify as to the meanings of coded language used by the defendants in intercepted communications. See Frazier, 387 F.3d at 1258. First, as the district court found, Agent Sargent was qualified to testify competently regarding the coded language. See id. At 1260-61. Agent Sargent was qualified based on, most notably, her extensive involvement in this particular investigation, including review of the more than 99 percent of the intercepted communications in this case, as well as her training, experience in previous wiretaps, and general investigative experience during her six years as a DEA agent.

Holt, 777 F.3d 1264-66. The court went on to find that Agent Sargent also based her conclusions on reliable methods, and that her testimony assisted the jury to understand the intercepted phone calls. Id. Furthermore, the court held that the record did support the defendants' claim that allowing Sargent to testify as an expert invaded the province of the jury. Id. Thus, movant's claim is barred from review in this 2255 proceeding pursuant to Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion).

Furthermore, to the extent that movant alleges that he received ineffective assistance of counsel by failing to move to preclude Sargent from testifying that he was the individual on the wiretap, such a claim is without merit for the reasons previously stated throughout this report. Movant's claim 43 should be denied.

In **claim 44**, movant alleges that appellate counsel, Bernardo Lopez, rendered ineffective assistance of counsel by failing to raise on direct appeal issues related to trial counsel's ineffectiveness. (CV-DE#8:22). He also claims that appellate counsel was ineffective because he failed to raise a "constructive amendment argument" in movant's direct appeal. (Id.).

The Sixth Amendment does not require attorneys to press every non-frivolous issue that might be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. Jones v. Barnes, 463 U.S. 745, 753-54 (1983). The Supreme Court has recognized that "a brief that raises every colorable issue runs the risk of burying good arguments - those that . . . 'go for the jugular.'" Id. at 753. To be effective, therefore, appellate counsel may select among competing non-frivolous arguments in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756, 781-82 (2000). Indeed, the practice of "winnowing out" weaker arguments on appeal, so to focus on those that are more likely to prevail, is the "hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434, 445 (1986). In considering the reasonableness of an appellate attorney's decision not to raise a particular claim, therefore, this Court must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." Eagle v. Linahan, 279 F.3d 926, 940 (11th Cir. 2001), quoting, Strickland, 466 U.S. at 691. In the context of an ineffective assistance of appellate counsel claim, "prejudice" refers to the reasonable probability that the outcome of the appeal would have been different. Eagle v. Linahan, 279 F.3d 926, 943 (11th Cir. 2001); Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990); see also Robbins, 528 U.S. at 285-86 (claim for

ineffective assistance of appellate counsel requires showing that appellate counsel's performance was deficient and that, but for counsel's deficient performance, the defendant would have prevailed on appeal); <u>Shere v. Sec'y Fla. Dep't of Corr.</u>, 537 F.3d 1304, 1310 (11th Cir. 2008)(same).  Thus, in determining whether the failure to raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim and, only if it is concluded that it would have had a reasonable probability of success, then can counsel's performance be deemed necessarily prejudicial because it affected the outcome of the appeal.  <u>Eagle</u>, 279 F.3d at 943; <u>see</u>, <u>also</u>, <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues).

Moreover, "failure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under §2255." <u>Massaro v. United States</u>, 538 U.S. 500, 509 (2003).  Indeed, "in most cases a motion brought under §2255 is preferable to direct appeal for deciding claims of ineffective assistance." <u>Id.</u> at 504; <u>see also United States v. Curbelo</u>, 726 F.3d 1260, 1267 (11th Cir.2013)("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. §2255." (<u>citing United States v. Patterson</u>, 595 F.3d 1324, 1328 (11th Cir.2010))), cert. denied, 134 S.Ct. 962 (2014).

A "constructive amendment" or "fatal variance" to an Indictment occurs when the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, broadens the possible bases for conviction beyond that contained in the Indictment. <u>United States v. Castro</u>, 89 F.3d 1443, 1452-1453 (11 Cir. 1996). "[N]ot all

differences between an indictment and the proof offered at trial, rise to the 'fatal' level of a constructive amendment." <u>United States v. Randall</u>, 171 F.3d 195, 203 (1999). A legally significant variance occurs when the evidence proves facts which are materially different from those alleged in the indictment. <u>United States v. Ramos-Oseguera</u>, 120 F.3d 1028 (9 Cir. 1997). The Court must determine whether the movant was convicted of an offense not charged in the Indictment. <u>United States v. Behety</u>, 32 F.3d 503 (11 Cir. 1994); <u>United States v. Artrip</u>, 942 F.2d 1568, 1570 (11 Cir. 1991). A variance between what is alleged in the charging document and the proof at trial is immaterial where there is no prejudice to the defendant. <u>Isom v. State</u>, 387 So.2d 529 (Fla. 3 DCA 1980).

Based on the foregoing law, movant's counsel was not ineffective for failing to raise issues of ineffective assistance of trial counsel on direct appeal. The reasoning in this report demonstrates that movant is not entitled to relief on any of his ineffective assistance of trial counsel claims, and as such, movant is unable to demonstrate prejudice such that there is a reasonable probability that the outcome would have been different had the ineffectiveness issues been raised on direct appeal. <u>Eagle v. Linahan</u>, 279 F.3d 926, 943 (11th Cir. 2001). Moreover, in most cases, claims of ineffectiveness are more appropriately brought in a §2255 motion to vacate sentence. <u>Massaro v. United States</u>, 538 U.S. at 504 (2003).

Furthermore, to the extent that movant claims that appellate counsel was ineffective for failing to raise a constructive amendment argument on direct appeal, such a claim is without merit. Review of the record reveals that Lamar Bennett, a cooperating co-conspirator, did testify that he first met Andre Barbary when he

began settling drugs for him in 1995. (Cr-DE#468:52-53). Counsel objected based on the fact that testimony regarding events from 1995 was outside the scope of the indictment, which only alleged the conspiratorial acts began in 2000. (Id.). Bennett then testified that he was arrested in 1996, and was in prison until 2000. (Id.:55). He then went on to discuss his involvement in the conspiracy after his release from prison. (Id.:55-75). Given the brief reference to Bennett's interactions with co-defendant Barbary in 1995, it cannot be said that movant was convicted of an offense not involved in the indictment. United States v. Behety, 32 F.3d 503 (11 Cir. 1994). Specifically, the portion of Bennett's testimony that was outside the scope of the indictment did not even serve to implicate movant. (Cr-DE#468:52-53). As such, there was no prejudice to movant. Isom v. State, 387 So.2d 529 (Fla. 3 DCA 1980).

Given the foregoing, appellate counsel was not ineffective for failing to raise any of these issues on direct appeal, and movant fails to establish that appellate counsel's performance was deficient under Strickland. Movant's claim should be denied.

Movant is cautioned that arguments not raised by movant before the magistrate judge cannot be raised for the first time in objections to the undersigned's Report. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)). Thus, "[W]here a party raises an argument for the first time in an objection to a report and recommendation, the district court may exercise its discretion and decline to consider

the argument." <u>Daniel v. Chase Bank USA, N.A.</u>, 650 F.Supp.2d 1275, 1278 (N.D. Ga. 2009)(<u>citing</u> <u>Williams v. McNeil</u>, 557 F.3d 1287 (11ᵗʰ Cir. 2009). Here, if movant attempts to raise a new claim or argument in support of this §2255 motion, the court should exercise its discretion and decline to address the newly-raised arguments.

## VIII.   <u>Evidentiary Hearing</u>

Movant's request for an evidentiary hearing must be denied. To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitled movant to relief. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)(citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11ᵗʰ Cir. 2003), <u>cert. den'd</u>, 541 U.S. 1034 (2004), an evidentiary hearing is not warranted.

## IX.   <u>Certificate of Appealability</u>

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus had no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). <u>See</u> 28 U.S.C. §2253 (c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 129 S. Ct. 1481 (2009). This Court should issue a certificate of appealability only if the movant makes "a substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. §2253 (c)(2). Where a district court has rejected a

movant's constitutional claims on the merits, the movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding, if movant does not agree, he may bring this argument to the attention of the district judge in objections.

## X.   **Conclusion**

For all of the foregoing reasons, is therefore recommended that this motion be DENIED on the merits; that final judgment be entered; that no certificate of appealability issue; and, that the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 28th day of March, 2018.



_____
UNITED STATES MAGISTRATE JUDGE

```
cc:  Scott W. Barnes, Pro Se
     Reg No. 97867-004
     Yazoo City Low
     Federal Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 5000
     Yazoo City, MS 39194

     David L. Goldberg

     U. S. Department of Justice
     21 East Garden Street
     Suite 400
     Pensacola, FL 32502
     (850)444-4000
     Fax: (850)434-9050
     Email: David.Goldberg@usdoj.gov
```